[No. 45578-8-I.   Division One.   December 26, 2000.]

LINDA M. PLANO, ET AL., *Appellants*, V. THE CITY OF RENTON, *Respondent*.

*Scott A. McDonald* and *Max J. Meyers* (of *Scott McDonald & Associates*), for appellants.

*Zanetta L. Fontes* (of *Warren Kellogg Barber Dean Fontes, P.S.*), for respondent.

BECKER, J. — Appellant Linda Plano sued the City of Renton for injuries she suffered when she slipped and fell on a ramp leading to a moorage dock at a Renton park. Renton claimed immunity based on the recreational use

statute, RCW 4.24.210. The trial court granted summary judgment in favor of Renton and dismissed Plano's case. We reverse because Renton charges moorage fees. The statutory immunity does not apply if the landowner charges "a fee of any kind" for the use of the land or water area where the injury occurs. RCW 4.24.210(1).

The City of Renton owns and maintains Gene Coulon Memorial Beach Park on the southeast shore of Lake Washington. The park has paths and walkways, picnic areas, fishing piers, a swimming area, and a playground. It also has a boat launch area and a floating dock for boat moorage. The floating moorage dock is accessible to the rest of the park by means of two gangways that connect the dock to a fixed pier.

At 7 p.m. on Sunday, June 4, 1995, Linda Plano drove to the park to pick up her boat from the moorage dock. She walked along the fixed pier, and then down the gangway that connects the pier to the floating moorage dock. There are handrails on the gangway. The handrails end at the bottom where a metal ramp attaches the gangway to the floating dock. Plano slipped and fell on the wet metal ramp. As a result of the fall she suffered a compound fracture of her right leg.

Plano sued the City of Renton, as well as several construction and engineering firms, on the theory that the ramp was not built to the requirements of the Uniform Building Code for slope and handrails. Plano and Renton filed cross motions for summary judgment to determine whether Renton, as the owner of recreational land, was immune from liability under the recreational use statute. The court granted Renton's motion and Plano appeals.

■ Review of an order of summary judgment is de novo. *Simpson Tacoma Kraft Co. v. Dep't of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). Here, the facts are undisputed and the legal issue is the effect of the statutory phrase, "without charging a fee of any kind therefor." RCW 4.24.210(1). The statutory grant of immunity is to be strictly construed. *Matthews v. Elk Pioneer Days*, 64 Wn.

App. 433, 437-38, 824 P.2d 541, *review denied*, 119 Wn.2d 1011 (1992) (outdoor recreation does not include festivals).

■ The recreational use statute, RCW 4.24.210, provides immunity for landowners, including public landowners, for unintentional injuries to users of lands or water areas that are made available to the public for recreational use without charging a fee of any kind for the use of such lands or water areas:

> (1) Except as otherwise provided in subsection (3) of this section,[1] any public or private landowners or others in lawful possession and control of any lands whether designated resource, rural, or urban, or water areas or channels and lands adjacent to such areas or channels, who allow members of the public to use them for the purposes of outdoor recreation, which term includes, but is not limited to, the cutting, gathering, and removing of firewood by private persons for their personal use without purchasing the firewood from the landowner, hunting, fishing, camping, picnicking, swimming, hiking, bicycling, skateboarding or other nonmotorized wheel-based activities, hanggliding, paragliding, the riding of horses or other animals, clam digging, pleasure driving of off-road vehicles, snowmobiles, and other vehicles, boating, nature study, winter or water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, without charging a fee of any kind therefor, shall not be liable for unintentional injuries to such users.

RCW 4.24.210.

Renton does not charge a fee to enter the park. Renton does not charge a fee to use most of the park's facilities. But Renton does charge a fee for overnight moorage. Boaters must pay $10 per night to moor between 6 P.M. and 8 A.M. The purchase of an annual boat launch permit entitles a boater to one free night of moorage. Moorage is free between the hours of 8 A.M. and 6 P.M. for up to four hours. The moorage fee drop box is on the fixed pier. Posted with the drop box are the moorage regulations. A sign states that the City of Renton enforces the moorage regulations, and vio-

---

[1] Subsection (3) of RCW 4.24.210 exempts a fee charged to cut and remove firewood.

lators are subject to fine and impound.

Plano first moored her boat overnight at the park on Friday, June 2, 1995. She did not pay a moorage fee because she had purchased an annual boat launch permit which allowed her a free night of moorage. On the next night, June 3, Plano again moored overnight at the park. She paid the $10 fee by dropping the fee in the drop box. On Sunday, June 4, she left her boat moored at the dock during the day and was returning to pick it up after 6 p.m. when the accident occurred. She had not paid a moorage fee for June 4th.

Renton claims immunity from Plano's suit on the basis that Plano did not pay a fee for moorage on the day the injury occurred. Some jurisdictions, enforcing differently worded statutes, have taken that approach. For instance, the Kentucky Court of Appeals concluded that a municipality was immune from suit for a young diver's injury because, although the community center charged fees at certain times of the day, the diver came during the time of day when children were admitted free, and had not paid a fee to use the pool. *Midwestern, Inc. v. N. Ky. Cmty. Ctr.*, 736 S.W.2d 348, 350 (Ky. Ct. App. 1987). The question under Washington's statute, however, is not whether Plano actually paid a fee for using the moorage, or whether Renton actually charged a fee to the person injured. The question is whether Renton charges a "fee of any kind" for using the moorage. This statutory language needs no interpretation as it is unambiguous. *See Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991).

Our analysis on this point is consistent with *Gaeta v. Seattle City Light*, 54 Wn. App. 603, 774 P.2d 1255, *review denied*, 113 Wn.2d 1020 (1989). In *Gaeta*, the plaintiff attempted to avoid the statutory immunity by showing that his purpose in coming on the land was commercial, not recreational. The court held that the application of the statutory immunity depends on the perspective of the landowner as to the use of the land, not on the purpose of the user. *Gaeta*, 54 Wn. App. at 608-09. From Renton's

perspective, the moorage is available for members of the public to use for purposes of outdoor recreation. Under the statute, immunity is available only if Renton does not charge a fee of any kind for such use.

Renton also claims immunity on the theory that there is no fee charged to people who walk on the dock or the gangway without mooring a boat, or who moor for less than four hours during the day. Again, precedent for such an approach can be found in other jurisdictions whose statutes are somewhat different from Washington's. *See, e.g., Flohr v. Pa. Power & Light Co.*, 821 F. Supp. 301, 305 (E.D. Pa. 1993) (although the plaintiffs had paid a camping fee, the landowner was immune because the plaintiffs could have used the area where the accident occurred without charge if they had come only for the day). But Washington's statute does not say that a landowner can have immunity so long as the lands or water areas are available free of charge some of the time. The statute simply states that there is no immunity if the owner charges a "fee of any kind."

The Ninth Circuit, applying Washington's statute, has held that a landowner may charge a fee for something other than use of the land, and still enjoy recreational use immunity. *See Jones v. United States*, 693 F.2d 1299 (9th Cir. 1982). The plaintiff in *Jones* injured herself in the Hurricane Ridge area of Olympic National Park while she was snow sledding on an inner tube she had rented from the park for a fee. The inner tube rental fee was not a fee charged for the entrance upon or the use of the land on which the injury occurred. *Jones*, 693 F.2d at 1303.

A landowner can also charge a fee for public use of a portion of its recreational land without losing immunity for public use of the remainder. A Florida case illustrates the point. *Kleer v. United States*, 761 F.2d 1492 (11th Cir. 1985). The plaintiff was injured while diving from a bridge in an undeveloped portion of the Ocala National Forest. There was no fee for using this area. The court found immunity despite the fact that the government charged fees in developed areas of the National Forest. *Kleer*, 761 F.2d at 1495.

Washington's statute, which like Florida's is intended to encourage owners to make land available for public use, *see* RCW 4.24.200, is consistent with the approach in *Kleer*. A landowner does not need to devote an entire contiguous parcel of land to public use without charge in order to have immunity. *See Kleer*, 761 F.2d at 1495. A landowner must show only that it charges no fee for using the land or water area where the injury occurred.

Using this analysis, the question is whether, by the imposition of the moorage fee, Renton charges a fee for the use of the particular area where Plano's injury occurred— the ramp leading to the dock. The trial court concluded it did not, stating that "no fee of any kind was charged for use of the subject ramp or gangway." But the metal ramp where Plano fell is a necessary and integral part of the moorage. The reason why the two ramps and the connecting gangways exist is to provide access to the floating dock, a fee-generating portion of the park. An overnight moorage patron cannot even pay the required moorage fee without walking up one of the ramps, including the one on which Plano fell. These facts establish that the ramp where the injury occurred is in the recreational area for use of which Renton charges a fee.

Apart from the statute, Renton also argues it should be immune from liability as a matter of public policy because Plano was illegally using the moorage dock at the time of her injury. This argument is not well supported.[2] Plano's complaint against Renton is a premises liability case. *See Cultee v. City of Tacoma*, 95 Wn. App. 505, 524, 977 P.2d 15, *review denied*, 139 Wn.2d 1005 (1999). The relevance of Plano's failure to pay a fee on the day of the accident, if any, will be determined according to ordinary tort principles. It has no bearing on the issue of immunity.

In summary, Plano's injury occurred while she was using

---

[2] For this argument Renton relies solely on the Court of Appeals decision in *Federated American Insurance Co. v. Strong*, 36 Wn. App. 256, 261, 673 P.2d 873 (1984), without recognizing that the Supreme Court reversed the Court of Appeals decision in that case. 102 Wn.2d 665, 689 P.2d 68 (1984).

the moorage. Renton charges a fee for use of the moorage and for that reason is not immune from Plano's suit. Accordingly, we reverse the order of summary judgment and direct entry of summary judgment on the issue of immunity in favor of Plano. Plano may proceed against Renton on her complaint of negligence.

Reversed.

AGID, C.J., and KENNEDY, J., concur.