[No. 84197-7. En Banc.]

Argued March 15, 2011.     Decided January 26, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. JOSE MATILDE
MORALES, *Petitioner*.

*Eric Broman* (of *Nielsen, Broman & Koch PLLC*), for petitioner.

*Jonathan L. Meyer, Prosecuting Attorney*, and *Sara I. Beigh, Deputy*, for respondent.

¶1 WIGGINS, J. — A person under arrest for vehicular assault is subject to a mandatory blood alcohol test. The suspect, however, must be given the special evidence warning that he or she will be subjected to a blood alcohol test and that he or she has the right to choose any qualified person to administer additional tests.

¶2 Prior to the mandatory blood draw in this case, Trooper Terry Brunstad asked an interpreter to read the special evidence warning in Spanish to Jose Morales. The trooper did not speak Spanish and could not verify that the warning was actually read to Morales. The interpreter was not called to testify at trial, nor was any signed special evidence form introduced into evidence.

¶3 We hold that Morales was not adequately informed of his right to an independent blood alcohol test, and we remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶4 In the early afternoon of November 3, 2004, Jose Matilde Morales "rolled the stop sign" located at the intersection of Big Hanaford Valley Road and State Route (SR) 507 and collided with a vehicle heading north on SR 507. II Verbatim Report of Proceedings (VRP) (Sept. 11, 2007) at 259.

¶5 After the collision, Morales slowed down but continued without stopping, leaving behind his front bumper with license plate still attached. Morales' car was badly damaged, but he continued to drive for roughly one mile where

he pulled to the side of the road when his car became inoperable.

¶6 Washington State Patrol Trooper Todd Thornburg arrived and immediately handcuffed Morales. Thornburg smelled an "obvious" odor of intoxicants and observed that Morales' eyes were bloodshot and watery. Thornburg spoke with Morales in English, and although there was "[s]ome-what of a language barrier," I VRP (Sept. 10, 2007) at 6, 12, Thornburg "didn't have a problem obtaining information [he] needed . . . as part of [his] investigation." II VRP (Sept. 11, 2007) at 168. No field sobriety or breath tests were administered at the scene of the accident.

¶7 Thornburg arrested Morales for hit and run and driving under the influence (DUI); Thornburg read Morales his *Miranda* rights in English. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Morales responded in English that he understood his rights. Trooper Terry Brunstad arrived at the scene and spoke with Morales. Brunstad, like Thornburg, smelled alcohol and observed that Morales' eyes were bloodshot and watery. Thornburg searched Morales' car and found "three full beer cans – or two bottles, one can full, and two empty cans." II VRP at 173. He also stated the car had "an obvious odor of intoxicants." *Id.* at 174. Thornburg learned there had been an injury in the other vehicle and informed Brunstad they would also process Morales for vehicular assault, which allows for a mandatory blood alcohol test.

¶8 Morales was transported to a hospital by ambulance; Brunstad followed. At the hospital, Brunstad enlisted the help of an apparently Spanish-speaking hospital employee. Brunstad testified he gave the interpreter forms containing *Miranda* rights and the special statutory notice informing Morales that he would be subject to a blood alcohol test and had the right to an independent test.[1] Brunstad did not

---

[1] The record does not reveal whether the warnings were given in English and Spanish or just in English.

read these notices to Morales in English; instead, he instructed the interpreter to read the notices to Morales in Spanish. Brunstad does not speak Spanish and testified he does not know if the special statutory notice was actually read to Morales. The interpreter appeared to have read the notice to Morales, who appeared to have understood the interpreter. Morales did not ask any questions. Brunstad testified he saw Morales sign the forms. Shortly thereafter a phlebotomist drew two vials of Morales' blood. Brunstad then read, and the translator interpreted, the DUI interview questions.

¶9 The State charged Morales with hit and run, DUI, and vehicular assault. The vehicular assault charge included all three alternatives: DUI, driving recklessly, and driving with disregard for the safety of others. RCW 46.61.522(1). Morales used an interpreter throughout the trial.

¶10 Before the trial began, Morales moved under CrR 3.5 to exclude any statements by Morales because the State could not prove that he was given *Miranda* warnings. Trooper Brunstad testified at the CrR 3.5 hearing that he asked the hospital's emergency room interpreter to read to Morales his *Miranda* rights and also the statutory blood alcohol test notice. Brunstad then read through a list of 30 questions regarding the DUI arrest, the translator spoke to Morales in Spanish, and the translator then relayed an answer to Brunstad in English. On cross-examination, Brunstad admitted that he had "no idea what was said though between them in Spanish." I VRP at 77. The trial judge correctly ruled that Brunstad could not testify to any of the statements by the interpreter because the State could not prove that the interpreter had given *Miranda* warnings to Morales.

¶11 The State did not call the interpreter to testify and never identified him, nor did it produce the allegedly signed special statutory notice form. Defense counsel objected to the admission of Morales' blood test because the

only evidence regarding the special evidence warning was Trooper Brunstad's testimony that he had handed the warning to the interpreter and had listened while the interpreter spoke to Morales in a language Brunstad did not understand. The trial court ruled the blood alcohol test was admissible on the mistaken theory that a defendant under arrest for vehicular assault is not entitled to notice of the special evidence warning. The jury returned guilty verdicts on all three charges and a special verdict as to vehicular assault, finding Morales had operated a motor vehicle: under the influence of intoxicating liquor, in a reckless manner, and with disregard for the safety of others. Morales appealed.

¶12 On appeal, Morales did not contest his convictions for hit and run and vehicular assault by means of disregard for the safety of others. But he challenged his convictions for DUI and vehicular assault by means of driving a motor vehicle under the influence of intoxicating liquor and in a reckless manner.[2] The Court of Appeals majority held that the special statutory notice was required but that "uncontroverted evidence" sufficiently established "Morales received his special statutory notice . . . ." *State v. Morales,* 154 Wn. App. 26, 37, 225 P.3d 311 (2010). The majority also determined that even if the interpreter did not correctly read the statutory notice, Morales was not prejudiced by this error. *Id.* at 42. And even if the test results should have been suppressed, the error was harmless. *Id.* at 44-45. Judge Bridgewater dissented on the ground that "the State failed to prove that it advised Morales in Spanish of the special evidentiary warnings required by RCW 46.20.308(2)," and thus it was error for the trial court to admit "the results of his involuntary blood test." *Id.* at 52 (Bridgewater, J., dissenting). Morales filed a petition for

---

[2] The distinction is significant. Vehicular assault by driving under the influence of alcohol and by driving in a reckless manner have a seriousness level of 4 for sentencing purposes. Vehicular assault by driving in disregard for the safety of others has a seriousness level of 3. RCW 9.94A.515

review, challenging his convictions for DUI and for vehicular assault by means of driving under the influence of intoxicating liquor and in a reckless manner. We granted review. *State v. Morales*, 169 Wn.2d 1001, 234 P.3d 1172 (2010).

## ANALYSIS

¶13 The validity of implied consent warnings is a question of law. *City of Bellevue v. Moffitt*, 87 Wn. App. 144, 146, 940 P.2d 695 (1997). We review questions of law de novo. *State v. McCormack*, 117 Wn.2d 141, 143, 812 P.2d 483 (1991).

## I. Statutory Interpretation[3]

¶14 Our fundamental objective in construing a statute is to ascertain and carry out the intent of the legislature. *State v. Alvarez*, 128 Wn.2d 1, 11, 904 P.2d 754 (1995). We determine the intent of the legislature primarily from the statutory language. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). We construe the meaning of a statute by reading it in its entirety, *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002), and consider the entire sequence of all statutes relating to the same subject matter. *Estates of Donnelly*, 81 Wn.2d 430, 435, 502 P.2d 1163 (1972).

¶15 Courts review the implied consent warning not on a constitutional basis, but rather as a right granted as a matter of grace through the statutory process. *Gonzales v. Dep't of Licensing*, 112 Wn.2d 890, 896, 774 P.2d 1187 (1989); *State v. Whitman County Dist. Court*, 105 Wn.2d 278, 281, 714 P.2d 1183 (1986). There is a clear distinction

---

[3] The dissent characterizes the admission of Morales' blood alcohol level as strictly an "evidentiary ruling." Dissent at 580. This admission, however, stems from the trial judge's erroneous statutory interpretation. II VRP at 254-55 (holding that the "308 warning" requirements do not apply to defendants who fall under RCW 46.20.308(3)). We review questions of statutory interpretation de novo. *Qualcomm, Inc. v. Dep't of Revenue*, 171 Wn.2d 125, 131, 249 P.3d 167 (2011).

between a defendant's testimony translated through an interpreter and an interpreter's translation to the defendant of a statutory right to have a blood sample independently tested. A defendant has a much greater constitutional right in an accurate translation of his or her own words. *See State v. Carranza*, 24 Wn. App. 311, 315-16, 600 P.2d 701 (1979) (failure to give a suspect special notice of right to independent blood test "does not rise to the level of a constitutional denial of due process"). A statutory right to notice does not impose as demanding a burden of proof on the State as constitutionally required warnings.[4] We resolve this case on statutory grounds, not on constitutional grounds, although the statutory warning implicates constitutional issues.[5]

## II. Washington's Implied Consent Law, RCW 46.20.308

¶16 Washington's implied consent law creates a statutory presumption that anyone arrested for driving under the influence of alcohol has consented to a breath or blood test for purposes of determining the level of alcohol. RCW 46.20.308(1).[6] The driver may withdraw his consent and refuse to be tested unless unconscious or under arrest for vehicular homicide or assault, or DUI where there has been serious injury to a third party. RCW 46.20.308(2), (3);

---

[4] "Unlike notice of the statutory right to an independent blood test, *Miranda* protects a suspect from making any incriminating statements to police while in custody." *Morales*, 154 Wn. App. at 41 (citing *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004)). The State has a "heavy burden" of proving a defendant knowingly, intelligently, and voluntarily waived his constitutional right to remain silent. *Miranda*, 384 U.S. at 475.

[5] The United States Supreme Court has held that (1) taking a blood sample and admitting its analysis does not violate a defendant's Fifth Amendment privilege against self-incrimination; (2) blood alcohol content analysis is not "testimonial or communicative" in nature but, rather, constitutes " 'real or physical evidence' "; and (3) the taking of a blood sample is analogous to fingerprinting, photographing, or taking measurements of a suspect, where the suspect/donor's participation is irrelevant to analysis. *Schmerber v. California*, 384 U.S. 757, 761, 764-65, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1996).

[6] Although the legislature has amended this statute several times since the date of Morales' offense, the relevant language has not changed. Accordingly, we cite the current version of the statute.

*Gonzales v. Dep't of Licensing*, 112 Wn.2d 890, 895, 774 P.2d 1187 (1989). "Because of the seriousness of the offense, the Legislature has mandated that vehicular [assault] suspects submit to a blood test regardless of consent." *State v. Schulze*, 116 Wn.2d 154, 164, 804 P.2d 566 (1991); RCW 46.20.308(3).

¶17 Before administering a mandatory blood alcohol test of a person suspected of vehicular assault, the arresting officer must advise the suspect of his right to have additional tests administered by any qualified person of the arrestee's choosing. RCW 46.20.308(2); RCW 46.61.506(6). RCW 46.20.308(2) states, in relevant part, "The officer shall inform the person of his or her right . . . to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506[7] [(hereinafter "the 308 warning")]." Morales argues the State failed to prove he received notice of the 308 warning. Unfortunately, the State has not favored this court with a brief on the arguments raised on this appeal.[8]

¶18 An accused must be apprised of the 308 warning so that the accused has the opportunity to gather potentially exculpatory evidence, regardless of the fact that there is no right to refuse the mandatory blood test. *State v. Turpin*, 94 Wn.2d 820, 826, 620 P.2d 990 (1980). This " 'statutory requirement demonstrates an important protection of the subject's right to fundamental fairness which is built into our implied consent procedure.' " *State v. Bartels*, 112 Wn.2d

---

[7] RCW 46.61.506(6) states:

The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his or her own choosing administer one or more tests in addition to any administered at the direction of a law enforcement officer. The test will be admissible if the person establishes the general acceptability of the testing technique or method. The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.

[8] Sara I Beigh, Senior Deputy Prosecuting Attorney for Lewis County, who argued the case for the State, became counsel of record only after the deadline had passed for filing supplemental briefing on behalf of the State.

882, 886, 774 P.2d 1183 (1989) (quoting *State v. Canaday*, 90 Wn.2d 808, 817, 585 P.2d 1185 (1978)).

¶19 In *Turpin*, a state highway patrol trooper smelled alcohol on Turpin's breath when removing her from her vehicle after an accident. 94 Wn.2d at 821. Turpin was transported to a hospital emergency room where she was treated for injuries. Although Turpin was alert and responsive in the emergency room, the trooper told medical personnel Turpin was under arrest but did *not* inform Turpin. *Id.* at 822. Nor did the trooper advise Turpin about a blood alcohol test, but instead instructed a nurse to draw a blood sample. At no time did the trooper inform Turpin that a blood sample was to be taken or that she had a right to have independent blood tests performed. *Id.* Turpin was not informed of the blood test until three days later. *Id.* She was subsequently charged with vehicular homicide.[9] *Id.*

¶20 Turpin asserted a statutory right to be advised of her rights to additional testing under RCW 46.20.308. We noted that the right to be informed of additional tests was based on an independent statutory right. *Turpin*, 94 Wn.2d at 824-25. Turpin was precluded from obtaining evidence necessary to her defense because she was not given the 308 warning. *Id.* at 826. The court concluded that exclusion of the State's evidence was the only proper remedy because the "State cannot be allowed to use evidence which the defendant is unable to rebut because she was not apprised of her right to independent testing." *Id.* It is undisputed that Turpin was not read the 308 warning, unlike Morales' situation, where the State claims a translator read this warning to him.

---

[9] Similar to the alternatives in *Morales*, Turpin was charged with all three alternatives of vehicular homicide: (1) vehicular homicide under the influence of or affected by intoxicating liquor or drugs, or (2) by means of operation of any vehicle in a reckless manner, or (3) with disregard for the safety of others. Turpin was actually charged with negligent homicide. Negligent homicide was subsequently renamed vehicular homicide in 1983. Laws of 1983, ch. 165, § 1; *see infra* p. 572. Because the statutory definition has not changed, we use its current designation.

¶21 The *Morales* trial court admitted Morales' blood alcohol test results, holding that the 308 warning was not required because Morales was arrested for vehicular assault, which falls under subsection (3) of the implied consent statute.[10] The trial judge reasoned that "[t]he legislature has determined that a specific class of people under [RCW 46.20.308(2)] shall be advised of these things. They specifically [exempted] the people under [RCW] 46.20-.308(3) and did not mandate that law enforcement shall inform them of [the 308 warning]." II VRP at 254-55.

¶22 RCW 46.20.308(2) states that when an officer suspects DUI, the officer can administer or direct a breath or blood test. It further states that "[t]he officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506." RCW 46.20.308(2). RCW 46.20.308(3) provides in relevant part that if an individual is under arrest for the crime of vehicular assault, "a breath or blood test may be administered without the consent of the individual so arrested." *Id.*

¶23 The implied consent law was passed by initiative in 1968 and codified at RCW 46.20.308.[11] LAWS OF 1969, ch. 1,

---

[10] The dissent argues an alternative ground for affirming the admission of the test, reasoning that the trial judge could have relied on the inadmissible hearsay evidence from Trooper Brunstad under ER 104 and then admitted the test based on Brunstad's testimony. Dissent at 580. Although the trial court *could* have relied on ER 104, the court never did so and neither party suggested the possible applicability of the rule at trial, in the appellate court, or in this court. ER 104 permits the trial court to exercise judgment in light of the facts and admit or exclude the offered evidence. But the trial court here admitted the test in the mistaken belief that the statutory warning was not required and never purported to make a determination whether to rely on hearsay to admit the test. The dissent usurps the role of the trial court in purporting to apply ER 104 here.

[11] Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61.506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle

§ 1 (Initiative Measure 242, adopted Nov. 5, 1968). "According to the statute, a driver was deemed to have given consent to a Breathalyzer test if arrested by the police for driving while intoxicated." *Carranza*, 24 Wn. App. at 313-14. In 1975, the legislature added a provision to RCW 46.20.308(1), which stated, "[A] breath or blood test may be administered without the consent of the individual" in a negligent-homicide-by-motor-vehicle case or DUI arrest, "[whose] arrest results from an accident in which another person has been injured . . . ." LAWS OF 1975, 1st Ex. Sess., ch. 287, § 4(1); *Carranza*, 24 Wn. App. at 314. Negligent homicide was amended to vehicular homicide in 1983 and vehicular assault was also added as an offense that does not allow a suspect to withdraw consent. LAWS OF 1983, ch. 165, § 1.

¶24 The mandatory 308 warning and mandatory blood or breath test were originally part of one subsection. Former RCW 46.20.308(1) (1979); *see State v. Holcomb*, 31 Wn. App. 398, 399-400, 642 P.2d 407 (1982). RCW 46.20.308(1) was divided into five separate subsections in 1983. LAWS OF 1983, ch. 165, § 2. This change, however, did not alter the legislative intent. Subsection .308(1) still applies here since it is the subsection of RCW 46.20.308 that provides implied consent by virtue of operating a motor vehicle in this State. Subsection .308(1) provides that consent is subject to RCW 46.61.506, which in subsection (6) provides for the right of independent testing. Even though RCW 46.61.506(3) eliminates a vehicular assault suspect's right to withdraw consent, all other provisions of subsection .308(1) still apply.

---

while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. Unless the person to be tested is unconscious, the chemical test administered shall be of his breath only.

Former RCW 46.20.308(1) (1969).

Thus, a driver arrested for vehicular assault must be advised of the 308 warning.

III. Translator/Interpreter Statutes and Case Law

¶25 Neither RCW 46.20.308 nor *Turpin* specifically addresses translation/interpretation of the 308 warning. However, the legislature has set forth a clear state policy for securing the rights of non-English speaking persons who are unable to readily understand or communicate in the English language:

> It is hereby declared to be the policy of this state to secure the rights, constitutional or *otherwise*, of persons who, because of a non-English-speaking cultural background, are unable to readily understand or communicate in the English language, and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them.

RCW 2.43.010 (emphasis added). The legislature has explicitly indicated a desire to ensure non-English-speaking persons are afforded the full protection of the law. Our courts also recognize the importance of translating legal rights so that non-English-speaking persons understand those rights: "The Washington Courts are committed to ensuring equal access to justice for all individuals regardless of their ability to communicate in the spoken English language." Washington State Court Interpreter Program, http://www.courts.wa.gov/programs_orgs/pos_interpret/ (last visited Jan. 23, 2012).

¶26 Morales moved to exclude Trooper Brunstad's testimony that the interpreter gave Morales the 308 warning. The trial judge ruled, again correctly, that Brunstad could testify to "[w]hat he did and what he said. But he can't speak on behalf of, of course, the defendant or the interpreter." II VRP at 205-06. Brunstad testified that he could not say that the interpreter read any rights to Morales because he had no idea what they were talking about. All that Brunstad could say was that he asked the interpreter

to read the 308 warning; he could not say that the interpreter did so.

¶27 The trial judge's ruling was correct. Brunstad would have known that the 308 warning was actually read to Morales only if the interpreter had told Brunstad that it was read. But such testimony by Brunstad would have been classic hearsay—Brunstad's in-court declaration of a statement made by the interpreter, "I read the rights to Morales"—in order to prove the truth of the matter asserted. This is inadmissible hearsay unless the testimony is *not* offered for the truth of the matter asserted or the interpreter is an agent of the declarant. *State v. Phu V. Huynh*, 49 Wn. App. 192, 203, 742 P.2d 160 (1987); *State v. Garcia-Trujillo*, 89 Wn. App. 203, 204-05, 948 P.2d 390 (1997).

¶28 *Huynh* considered whether statements made by the defendant to a police officer through an interpreter were properly admitted at trial through the officer's testimony. Relying on *Lopez*, the Court of Appeals held that " 'a witness is incompetent to testify to extrajudicial statements made by another person when it is necessary to have the statement translated before it can be understood by the witness. Such testimony is clearly hearsay because the witness testifies to what the interpreter asserts the other party said.' " *Huynh*, 49 Wn. App. at 203 (quoting *State v. Lopez*, 29 Wn. App. 836, 839, 631 P.2d 420 (1981) (police officer's testimony of what interpreter asserted Lopez told him was inadmissible hearsay)).

¶29 RCW 46.20.308(2) requires the State to administer the 308 warning to a person under arrest for vehicular assault, and the State *must* demonstrate at trial the warning was read. *Turpin*, 94 Wn.2d at 824-25; *State v. Dunivin*, 65 Wn. App. 501, 503, 828 P.2d 1150 (1992). "The arrestees must be informed in a *meaningful* manner of those rights . . . ." *State v. Stannard*, 109 Wn.2d 29, 41, 742 P.2d 1244 (1987) (Utter, J., concurring) (emphasis added). The State has the burden of proving the 308 warning was

actually read to a vehicular assault defendant; substantial compliance is not enough. *Whitman County Dist. Court*, 105 Wn.2d at 283 (citing *State v. Krieg*, 7 Wn. App. 20, 497 P.2d 621 (1972)); *State v. Anderson*, 80 Wn. App. 384, 389, 909 P.2d 945 (1996) (giving blood sample to defendant's father and advising father to take sample to a named but unlisted laboratory does not satisfy statute).

¶30 RCW 46.20.308 places squarely on the State the burden of proving the 308 warning was administered. Morales was not asserting an affirmative defense and had no obligation to present evidence of prejudice; it was the State's burden to prove him guilty beyond a reasonable doubt. The State was not required to seek admission of Morales' blood test; it *chose* to do so.

¶31 RCW 46.20.308 does not address the standard of proof required for the 308 warnings. The Court of Appeals held a preponderance of the evidence standard applies to the State's burden of showing that "Morales received notice of his right to independent blood alcohol testing" and found that the State met this standard. *Morales*, 154 Wn. App. at 39-40. We need not decide whether the preponderance standard is the correct standard because we agree with the Court of Appeals dissent that the State failed to prove even by a preponderance of the evidence that Morales was given the 308 warning. *Morales*, 154 Wn. App. at 53 (Bridgewater, J., dissenting).

¶32 We have noted the importance of the right to independent testing of blood samples when the subject might be charged with crimes even more serious than DUI:

> It is in just such cases that the need to protect the defendant's right to proof is most important. The transiency of the defendant's allegedly intoxicated condition is an important factor in negligent homicide cases, since evidence which can help prove or disprove the charge will disappear within a relatively short time. In addition, as noted by Judge McInturff in his dissent to *Carranza*:
>
>> When a chemical test to determine blood alcohol content is made . . . the issue of the accuracy of the testing procedures

immediately arises. The purpose underlying the defendant's right to have additional tests taken thus becomes obvious: "[T]hat he may have his own tests made if he fears the accuracy or fairness of the test to be given by law enforcement officers." *State v. Richardson*, 81 Wn.2d 111, 116, 499 P.2d 1264 (1972).

*State v. Carranza, supra* at 318 (McInturff, J., dissenting).

*Turpin*, 94 Wn.2d at 826 (alterations in original). We have also noted that "a person accused of driving while under the influence of alcohol is entitled to a reasonable opportunity to gather evidence in his or her defense." *Stannard*, 109 Wn.2d at 39 (Utter, J., concurring). More recently, we observed that in a DUI case the right to independent testing "is in keeping with a defendant's constitutional due process right to gather evidence in his own defense." *State v. McNichols*, 128 Wn.2d 242, 250-51, 906 P.2d 329 (1995); *Stannard,* 109 Wn.2d at 35. We resolve this case on statutory grounds, finding it unnecessary to consider any possible constitutional implications.

¶33 The only evidence that the 308 warning was read to Morales was Trooper Brunstad's testimony. "The State offered the trooper's testimony to prove the truth of the matter asserted—that an interpreter read Morales the special evidence warning." *Morales*, 154 Wn. App. at 55 (Bridgewater, J., dissenting). Brunstad cannot testify to what the interpreter said to Morales based on his own understanding because he had no independent knowledge of the interpreter's words. He did not know whether the warning was translated precisely as printed or at all. In fact Brunstad stated, "I can tell you again I don't speak Spanish, so I don't know [if he was informed of the right to additional tests]." II VRP at 221. Brunstad could not testify that the warning was actually given, only that he heard the translator speaking to Morales; his testimony was hearsay and inadmissible. Accordingly, we hold the State failed to prove the 308 warning was actually read to Morales, and thus, the blood test results were erroneously admitted. "[N]ot know-

ing of his right to have additional tests was a denial of the opportunity to procure a blood test on the charge of [vehicular assault] and prevented the accused from obtaining evidence necessary to his defense." *Carranza*, 24 Wn. App. at 320-21 (McInturff, J., dissenting).

IV. Effect of Lack of 308 Warning

¶34 *Turpin* involved a vehicular homicide charge where the 308 warning was never recited. The vehicular homicide charge, nearly identical to Morales' vehicular assault charge, included all three alternatives: DUI, driving recklessly, and driving with disregard for the safety of others. Former RCW 46.61.520 (1976). As a result, the court held that under RCW 46.20.308, the blood alcohol test results were inadmissible.[12] We now determine which offenses were affected by the State's failure to give the 308 warning.

¶35 Admission of the blood alcohol test results did not prejudice Morales in the hit and run charge; indeed, Morales did not contest that charge. The blood alcohol test results obviously infected the charge of "driving while under the influence of intoxicating liquor." RCW 46.61-.502(1). "Morales's blood alcohol level was per se evidence that Morales drove under the influence of alcohol." *Morales*, 154 Wn. App. at 58 (Bridgewater, J., dissenting); RCW 46.61.502(4). Accordingly, we reverse Morales' DUI conviction. We see equal prejudice in the vehicular assault by the DUI conviction; it too is reversed.

---

[12] The dissent analyzes the admission of Morales' blood alcohol results under a "nonconstitutional harmless error standard." Dissent at 582. This standard is viable only if we overrule *Turpin*. *See Turpin*, 94 Wn.2d at 826 (holding that exclusion of evidence is the appropriate remedy for violation of defendant's statutory rights). The likelihood the jury would have reached a different verdict had the blood alcohol test results not been admitted is not the proper test under *Turpin*. *See* dissent at 581. *Turpin* requires reversal regardless of the effect on the jury. Moreover, failure to ensure that Morales was given the statutory warning deprived him of any opportunity to ask for an independent test, which might have resulted in a blood alcohol reading significantly lower than the State's test. The dissent's harmless error evaluation fails to recognize the full impact of the statutory violation.

¶36 The vehicular assault by reckless driving is more problematic. Washington defines "reckless driving" as the operation of "any vehicle in willful or wanton disregard for the safety of persons or property." RCW 46.61.500(1). During closing argument, the prosecuting attorney stated, "Reckless driving. Operating a motor vehicle in a reckless manner means to drive in a rash or heedless manner indifferent to the consequences. He ran a stop sign and he was under the influence of alcohol. And we know he had a .12 blood alcohol content because they drew his blood at the hospital." III VRP (Sept. 12, 2007) at 293. In rebuttal, the prosecuting attorney once more mentioned Morales' blood alcohol content. *Id.* at 318. Although it is certainly true that rolling through a stop sign and failing to stop after a collision is indicative of reckless driving, the evidence is not so overwhelming as to overcome the erroneous admission of Morales' blood alcohol level. In light of this prejudice, we reverse Morales' vehicular assault by reckless driving conviction. Our resolution is consistent with our prior reversal of Turpin's conviction under the different means of committing vehicular homicide. *Turpin*, 94 Wn.2d at 827.

CONCLUSION

¶37 The State failed to prove the 308 warning was read to Morales; thus, the blood alcohol test results were erroneously admitted. We affirm Morales' conviction for hit and run, reverse the convictions for DUI and vehicular assault by driving a motor vehicle under the influence of intoxicating liquor and in a reckless manner, and we remand for further proceedings consistent with this opinion.

Madsen, C.J.; C. Johnson, Chambers, Owens, Fairhurst, and Stephens, JJ.; and Alexander, J. Pro Tem., concur.

¶38 J.M. Johnson, J. (dissenting) — An appellate court should uphold a conviction if there are sufficient grounds to

sustain the judgment even if the trial judge has made an erroneous legal interpretation. In this case, the State met its burden to prove by a preponderance of evidence that the RCW 46.20.308 warning of right to a second blood test was given. Even if the State did not meet its burden, the admission of the blood test results here was harmless error. Thus, I would uphold the conviction of Jose Morales.

¶39 Marilyn Robertson and her elderly mother were driving north on State Route 507 when a vehicle driven by Morales hit their car. Morales, who later admitted to consuming beer before driving, had just driven through a stop sign into their lane of travel.

¶40 Ms. Robertson and her mother found themselves in a ditch. Ms. Robertson suffered injuries to her knees, shoulders, neck, and forehead. Her mother suffered a fractured ankle and a twisted foot. Morales drove on, leaving his front bumper behind with the license plate attached. Morales did not pull over until his heavily damaged car became inoperable.

¶41 A retired police officer and his brother were in the area and realized what had transpired. The retired officer detained Morales, and the brother called for assistance. The retired officer told Morales he should have stayed at the accident scene. Morales replied, in English, "I don't care about the people in the accident." 2 Verbatim Report of Proceedings (Sept. 11, 2007) at 158.

¶42 Washington State Trooper Todd Thornburg arrived and conversed with Morales in English.[13] Thornburg smelled an "obvious odor of intoxicants" emanating from Morales and his vehicle, and he observed that Morales' eyes were watery and bloodshot. *Id.* at 174. Another officer noted that Morales' pupils were dilated, which he later testified could indicate someone was under the influence of drugs or alcohol. Trooper Thornburg arrested Morales for driving under the influence

---

[13] At this time, Morales said he had consumed one beer before driving. *State v. Morales*, 154 Wn. App. 26, 32, 225 P.3d 311 (2010).

and for committing a hit and run. Later, during a lawful search of Morales' vehicle, five beer cans were found inside the vehicle, two of them empty. One of the empty beer cans was found on the front passenger seat. Because the majority nevertheless reverses these convictions due to the disputed admission of blood alcohol test results, I respectfully dissent.

ANALYSIS

¶43 The warning requirement found in RCW 46.20.308 is merely a statutory right, and there is no evidence that the requirement is grounded in due process. In this case, the State satisfied its burden of proving that, more likely than not, Morales was informed of his statutory right to have additional blood tests administered by any qualified person of his choosing. Alternatively, the Court of Appeals was correct to hold that this case can be resolved on harmless error grounds. *State v. Morales*, 154 Wn. App. 26, 44-45, 225 P.3d 311 (2010).

A. The State Met Its Burden of Proving that Morales Was Informed of His Right to Independent Testing

¶44 It is our duty to affirm "[i]f the judgment of the trial court can be sustained upon any ground, whether [it is based on] the grounds stated by the trial court or not." *State v. Carroll*, 81 Wn.2d 95, 101, 500 P.2d 115 (1972). Although the trial judge may have misinterpreted the law, ER 104(a) would allow otherwise inadmissible hearsay evidence from Trooper Brunstad to be considered by the trial judge. "It is well established that a trial court is 'not bound by the Rules of Evidence' when it determines questions concerning the admissibility of evidence." *State v. Jones*, 112 Wn.2d 488, 493, 772 P.2d 496 (1989) (quoting ER 104(a)). The State must then prove satisfaction of the warning requirement by a preponderance of the evidence.

¶45 Here, the State met its burden of proving that Morales was, more likely than not, informed of his right to

have additional blood tests administered by any qualified person of his choosing. The record indicates that the police officer contacted a Spanish-English interpreter who worked in a hospital emergency room, gave the interpreter the forms containing the required statutory notice, instructed the interpreter to read the statutory notice to Morales, and observed the interpreter reading the notice to Morales, who appeared to understand, who signed the form, and who did not ask any questions. Only then was Morales' blood drawn.

¶46 This sequence of events is not at all like the situation in *State v. Turpin*, 94 Wn.2d 820, 620 P.2d 990 (1980). In that case, a police officer instructed a nurse to draw a blood sample from a woman arrested for negligent homicide but did not inform the defendant until three days later that a blood alcohol sample had been taken. *Id.* at 822. The officer never informed Ms. Turpin of her statutory right to an independent blood test. *Id.*

¶47 Here, the police officer recognized that Morales spoke Spanish and made a good faith effort to secure his rights before obtaining evidence that could be used in a legal proceeding.[14] Not only was a good faith effort made, but the State proved it more likely than not that the officer informed Morales of his rights. This preliminary question of fact concerning the admissibility of evidence was properly before the court, regardless of whether the officer's testimony was hearsay or admitted to prove something other than the truth of the matter asserted.[15] It is not necessary to overrule *Turpin* in this case because there were enough facts in the record for the State to meet its burden of proving that the appropriate warning was given.

---

[14] *See* RCW 2.43.010 (announcing a state policy to provide qualified interpreters to non-English-speakers in legal proceedings).

[15] *See* ER 104(a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . . In making its determination it is not bound by the Rules of Evidence except with respect to privileges.").

¶48 The legislature may even eliminate the warning requirement in RCW 46.20.308, which is a statutory right and not a matter of constitutional due process.

## B. Harmless Error

¶49 We also review potentially erroneous rulings of admissibility under the nonconstitutional harmless error standard. *See State v. Ray*, 116 Wn.2d 531, 546, 806 P.2d 1220 (1991). An erroneous ruling of admissibility is harmless if it does not materially affect the outcome of the trial. *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986); *see also State v. Calegar*, 133 Wn.2d 718, 727, 947 P.2d 235 (1997) (quoting *Smith*, 106 Wn.2d at 780). The outcome of a trial is materially affected if the jury would have reached a different verdict had the error not occurred. *State v. Hardy*, 133 Wn.2d 701, 712, 946 P.2d 1175 (1997).

¶50 Here, Morales was driving with empty beer cans in his vehicle, an "obvious odor of intoxicants" emanated from both him and his vehicle, his eyes were bloodshot and watery, his pupils were dilated, and he failed to stop at a stop sign, causing the collision from which he fled. He also said in English, "I don't care about the people in the accident." Ms. Robertson suffered injuries to her knees, shoulders, neck, and forehead. Her elderly mother suffered a fractured ankle and a twisted foot. Given this evidence, it is unlikely the jury would have reached a different verdict had the trial court excluded the evidence about Morales' blood alcohol content.[16]

---

[16] A person is guilty of driving under the influence if the person drives a vehicle while the person is under the influence of or affected by intoxicating liquor. RCW 46.61.502(1)(b). No specific blood-level alcohol concentration is required to convict. *Id.* A person is guilty of vehicular assault by driving under the influence if the person drives any vehicle while under the influence of intoxicating liquor and causes substantial bodily harm to another. RCW 46.61.522(1)(b). A person is guilty of vehicular assault by reckless driving if the person drives any vehicle in a reckless manner and causes substantial bodily harm to another. RCW 46.61.522(1)(a). To operate a motor vehicle in a reckless manner means "to drive in a rash or heedless manner, indifferent to the consequences." Clerk's Papers at 41 (Juror Instruction 15). The above evidence supports the jury's verdict.

CONCLUSION

¶51 The evidence fully supports the jury's verdict, and any evidentiary error was harmless. The State also satisfied its burden to prove Morales was informed of his right to have an independent blood test before the test was admitted into evidence. It is not necessary to remand this case for further proceedings. I respectfully dissent.

After modification, further reconsideration denied March 7, 2012.