IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| COREY MCGRATH,<br><br>                    Appellant,<br><br>          v.<br><br>CITY OF SULTAN,<br><br>                    Respondent. | No. 87599-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — On June 19, 2022, Corey McGrath was injured while playing basketball on a court in Osprey Park, owned by the city of Sultan (the City). The basketball court is open to the public and generally available without any fee, but members of the public may reserve the basketball court for a fee. McGrath sued the City for damages related to his injuries. The City moved for summary judgment, asserting immunity under the recreational use immunity statute, RCW 4.24.210,[1] and the trial court granted the motion. The sole question before this court is whether the City is immune from liability under the recreational use statute. Because McGrath was injured while engaging in recreational use of City property that was generally open to the public without a fee, we affirm the trial court's decision.

FACTS

The following facts in this case are undisputed. On June 19, 2022, Corey McGrath was injured while playing basketball on a basketball court in Osprey Park.

---

[1] The statute in effect at the time of McGrath's injury in 2022 is former RCW 4.24.210 (2017), herein referenced as RCW 4.24.210, unless noted otherwise.

Osprey Park is owned by the City and, at 76.2 acres, is the City's largest and busiest park. The park's amenities include benches, baseball fields, soccer goals, a children's play area, sports fields, picnic tables, trails, a dog park, and a water fountain.

The park also has one basketball court with two hoops covered by a roof. As with the other areas of the park, the court is available to the public to use without a fee. Individuals and groups can reserve the basketball court for exclusive use, as they may do with other City facilities such as a pavilion in River Park and athletic fields. The fees for reserving the Osprey Park basketball courts are $50 for the court and $75 for the court and the adjacent field. When not reserved, the court is open to the public without charge, the same as with other City fields and facilities that may be reserved for a fee.

On June 19, 2022, McGrath did not have a reservation and was using the court for free. During play, the ball bounced off the rim and moved in the direction of a drainage ditch with vegetation. There was moss and debris on the ground in the surrounding area off the court. McGrath sprinted towards the ball and out of the court's bounds, where he "slipped and flew up in the air." As a result of the fall, McGrath suffered "(1) a broken left clavicle with displacement requiring surgical repair; (2) seven broken ribs (two with displacement); and (3) collapsed lungs."

After McGrath filed a complaint to recover damages related to his injuries sustained at the park, the City moved for summary judgment asserting, *inter alia*, immunity from liability under the recreational use statute, RCW 4.24.210. The trial court granted the City's motion and dismissed McGrath's claims. McGrath now appeals.

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to a judgment of law. CR 56(c); Camicia v. Howard S. Wright Const. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014). "When the facts are undisputed, immunity is a question of law for the court." Camicia, 179 Wn.2d at 693. We review a trial court's decision on a motion for summary judgment de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

A court's fundamental objective in construing a statute " 'is to ascertain and carry out the intent of the legislature.' " Camicia, 179 Wn.2d at 693 (quoting State v. Morales, 173 Wn.2d 560, 567, 269 P.3d 263 (2012)). "We determine the intent of the legislature primarily from the statutory language." Morales, 173 Wn.2d at 567. "While legislative intent cannot overcome 'an otherwise discernible, plain meaning' on the face of the statute, we must interpret the terms of a statute in harmony with its purpose." Camicia, 179 Wn.2d at 694 (quoting N. Coast Air Servs., Ltd. v. Grumman Corp., 111 Wn.2d 315, 321, 759 P.2d 405 (1988)). Statutory interpretation is a question of law reviewed de novo. Jametsky v. Olsen, 179 Wn.2d 756, 761-62, 317 P.3d 1003 (2014).

"[T]o be immune under RCW 4.24.210(1)[,] the landowner must establish that the use (1) was open to members of the public (2) for recreational purposes and (3) no fee of any kind was charged." Cregan v. Fourth Mem'l Church, 175 Wn.2d 279, 284, 285 P.3d 860 (2012). "Because recreational use immunity is an affirmative defense, the landowner asserting it carries the burden of proving entitlement to immunity under the statute." Camicia, 179 Wn.2d at 693.

Here, the parties do not dispute the first two elements, that the basketball court was (1) open to members of the public (2) for recreational purposes. Thus, only the third element is at issue, whether a fee of any kind was charged. We hold that no "fee of any kind" was charged in this case as McGrath was injured while engaging as a member of the public in free, unscheduled recreational use of the basketball court in Osprey Park. Thus, the City is immune under the recreational use immunity statute.

There is only one reservable basketball court in Osprey Park. It is undisputed that the court is free to all members of the public to use. The only exceptions are if someone has reserved the court for their exclusive use, which they may do for $50 for the court alone or for $75 with the adjacent field. In 2022—the year McGrath was injured—the basketball court at Osprey Park was reserved 19 times.

McGrath argues that the immunity statute does not apply because the City charges a fee to reserve the basketball court, and so the City cannot establish the third element for immunity, that "no fee of any kind" was charged for use of the area where he was injured. McGrath rejects the City's suggestion that "no fee of any kind" is limited to areas that are "permanent[ly] fee-generating," relying on Plano v. City of Renton,103 Wn. App. 910, 911, 14 P.3d 871 (2000). In Plano, the plaintiff was injured while walking along a ramp to access a boat moor at a public park. 103 Wn. App. at 910. The city did not charge a fee to enter the park or to use most of the park's facilities. Id. at 912. Use of the moor was "free between the hours of 8 a.m. and 6 p.m. for up to four hours," and payment of an annual boat launch permit came with one free night of moorage. Id. However, the city charged a fee to use the moor for longer than four hours and between 6 p.m. and 8 a.m. Id. at 912. The plaintiff was injured after 6 p.m. on a day for which she

4

had not paid a moorage fee. Id. at 913. Citing federal cases, the court in Plano reasoned that landowners do not lose recreational use immunity by charging a fee for something other than use of the land or for charging for public use of a portion of its land. Id. at 914.[2] Thus, the court determined, "the question [wa]s whether, by the imposition of the moorage fee, Renton charges a fee for the use of the particular area where Plano's injury occurred." Id. at 915. To be immune, a landowner must show "that it charges no fee for using the land or water area where the injury occurred." Id. at 915. This court held the city was not immune because "the ramp where the injury occurred is in the recreational area for use of which Renton charges a fee." Id.[3]

Responding to McGrath, the City argues that here, "the basketball court was open to the public for recreational use without a fee of any kind" in this case because McGrath did not himself pay a fee at the time he was injured. But in Plano, the court expressly stated, "[the plaintiff's] failure to pay a fee on the day of the accident . . . has no bearing on the issue of immunity." 103 Wn. App. at 915.

The City also posits that recreational use immunity applies as long as "the land was open to the public for free use *at the time* of the injury," citing Home v. North Kitsap School District, 92 Wn. App. 709, 717, 965 P.2d 1112 (1998). (Emphasis added). But Home is inapposite. Home concerned whether a football field was open to members of the public, not whether it cost a fee to use under RCW 4.24.210. Id. at 714-15.

_____

[2] See Jones v. United States, 693 F.2d 1299, 1303 (9th Cir. 1982) (applying Washington's recreational immunity statute where inner tube rental fee was not a fee charge for entrance or use of the land where injury occurred); Kleer v. United States, 761 F.2d 1492, 1495 (11th Cir. 1985) (government charged fees in developed areas of national forest, but not for undeveloped portion where plaintiff was injured).

[3] In Plano, there was an additional question of whether a fee of any kind was charged specifically to use the ramp where Plano fell, because there was no fee to walk on the ramp. The court determined the city was not immune because the ramp was a "necessary and integral" part of the moorage, and "[t]he reason why the two ramps and the connecting gangways exist is to provide access to the floating dock, a fee-generating area." 103 Wn. App. at 915.

Home, a football coach, was injured while coaching an "away" game at North Kitsap Junior High, "a school-sponsored event to which parents and other spectators were admitted without charge." Id. at 712. The field was "available for public use when not being used for school events or activities." Id. To determine whether the land was open to the public, the court noted it "is necessary to focus on the nature of the landowner's use at the time of the accident being litigated." Id. at 714. The school district was not immune from liability because it "was not holding the football field open for use by members of the public when Home was injured." Id. at 717. This analysis is inapposite here because "[t]he public and free-use requirements under RCW 4.24.210 are separate inquiries." See Cregan, 175 Wn.2d at 285. The proper focus, as noted above, is whether the area itself was fee-generating. See Plano, 103 Wn. App. at 914-15.

Further, the City argues that recreational use immunity applies where no fee is charged to the public for "unscheduled" use of land and a plaintiff is injured "during a period of unscheduled open use," even if the same facilities may be reserved for a fee. In support, the City points to Schwartz v. King County, 14 Wn. App. 2d 915, 474 P.3d 1092 (2020), aff'd, 200 Wn.2d 231 (2022). There, a bicyclist struck a bollard on a portion of the Green River trail in King County and was rendered quadriplegic. Id. at 918. While there was no fee required to use the portion of the trail at issue, the plaintiff argued that the area was fee-generating because there was "one occurrence in the previous few years where . . . a private group hosted [a] race and had to have a permit" that required a fee. Id. at 923. The court reasoned, "It stretches credulity that a permit fee for one race could render the [area] . . . a 'fee generating area' that vitiates, in perpetuity, the County's recreational use immunity." Id. at 935. The court in Schwartz

contrasted the trail to, <u>e.g.</u>, the fee-generating areas in <u>Hively v. Port of Skamania County</u>—"a landing that charged fees to docking cruise ships and the entirety of one of the parks that was rented out for private events." <u>Schwartz,</u> 14 Wn. App. 2d at 935 (citing <u>Hively v. Port of Skamania,</u> 193 Wn. App. 11, 13, 372 P.3d 871 (2016)).[4]

In <u>Olson v. Tukwila School District</u>, the court similarly focused on the default access to the recreational use area at issue, not whether it could be scheduled for exclusive use for a fee. No. 72865-2-I, slip op. at 1 (Wash. Ct. App. Oct. 12, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/728652.pdf.[5] In <u>Olson</u>, the plaintiff was injured while using a track inside an athletic facility of a high school. No. 72865-2-I, slip op. at 1. Occasionally,[6] fees were charged for the exclusive use of the track by organized groups on scheduled dates that "might involve the District in planning, supervision, and cleanup." <u>Id.</u> at 6. Otherwise, the track was open to the public without a fee; members of the public could obtain free access cards to the track for use before or after school hours. <u>Id.</u> at 4-5. The District did not charge Olson a fee to use the running track. Id. at 5. We held that the school district had recreational use immunity under RCW 4.24.210. <u>See</u> <u>id.</u> at 8. Relying on the language in <u>Plano</u> that " '[u]nder the statute, immunity is available only if Renton does not charge a fee of any kind for *such* use,' " we reasoned that Olson was using the track as a member of the

---

[4] The immunity statute applied in <u>Hively</u> because the injury occurred on a pathway that was not an "integral part" of the Port's fee-generating areas, but it was undisputed that certain areas of the Port were fee-generating. 193 Wn. App. at 16-17.

[5] We generally do not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in our decisions. GR 14.1(c). However, we may cite unpublished opinions of this court filed on or after March 1, 2013, as nonbinding authorities and accord such persuasive value as we deem appropriate. GR 14.1(a).

[6] In the five years preceding the case, the school district had charged fees for use of the track seven times. <u>Id.</u> at 5. The record in this case shows that in 2022, the year McGrath was injured, the basketball court at Osprey Park was reserved 19 times. But the <u>Olson</u> court did not interpret the statute to suggest any particular number of times fees may be charged before immunity is lost, nor do we.

public when she was injured. Olson, No. 72865-2-I, slip op. at 6 (quoting Plano, 103 Wn. App. at 914) (emphasis added). Thus "the District was not liable for unintentional injuries to 'such users' because such use by individual members of the public was always free." Olson, No. 72865-2-I, slip op. at 7 (quoting Plano, 103 Wn. App. at 914).

Like the track in Olson, the basketball court here is generally open to members of the public without a fee. While there is a reservation system in place for individuals and groups to reserve the court for their exclusive use for a fee, that is not the default. To the contrary, public access to the basketball court is not conditioned on fees; only the right to *exclusive* use for a limited period of time requires a fee.[7] The unscheduled, non-exclusive recreational use of the basketball court is free.

Moreover, precluding liability in this case accords with the legislative intent in establishing recreational use immunity. In construing a statute, our objective is " 'to carry out the intent of the legislature,' "[8] and we "interpret the terms of a statute in harmony with its purpose." Camicia, 179 Wn.2d at 694. In 1966, the Washington Supreme Court extended premises liability to include injuries to public invitees, not just business visitors. See McKinnon v. Washington Fed. Sav. & Loan Ass'n, 68 Wn.2d 644, 650, 414 P.2d 773 (1966). In 1967, one year after the McKinnon decision, the legislature enacted the recreational use statute to immunize landowners who open their lands to public invitees for free recreational use. Former RCW 4.24.200 (1967). The statute's current version, passed by the legislature in 1969, demonstrates the

_____

[7] While we are mindful that the "open to public" and "no fee" elements are separate inquiries, Cregan, 175 Wn.2d at 285, we note that "[l]andowners who open their lands to the public may be able to restrict some access and still qualify for recreational use immunity," including by limiting the types of activities allowed and limiting the times of public access. Id. Here, the basketball court is open to the public except for when it is reserved.

[8] Camicia, 179 Wn.2d at 693 (quoting State v. Morales, 173 Wn.2d 560, 567, 269 P.3d 263 (2012)).

legislature's intent to confer such immunity to encourage landowners, and others in lawful control of property, to open their lands for such use:

> The purpose of RCW 4.24.200 and 4.24.210 is to encourage owners or others in lawful possession and control of land and water areas or channels to make them available to the public for recreational purposes by limiting their liability toward persons entering thereon and toward persons who may be injured or otherwise damaged by the acts or omissions of persons entering thereon.

RCW 4.24.200. "We may examine the legislative declaration of purpose to assist in determining that the plain meaning as we ascertain it is consistent with that declared purpose." N. Coast Air Servs., Ltd., 111 Wn.2d at 321.

Here, the City is exactly the type of landowner to whom the statute contemplates affording immunity. And McGrath's claims are exactly the type by a recreational user from which the statute contemplates immunity: claims by a member of the public making recreational use of land made available to the public for free. Accordingly, we conclude as a matter of law that the city of Sultan is immune under RCW 4.24.210.

## CONCLUSION

We affirm.

_Chung, J._

WE CONCUR:

_____, ACJ          _Díaz, J._