[No. 6729-7-III.   Division Three.   August 6, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. PAUL A. RUSSELL, *Petitioner.*

Richard Montoya, for petitioner.

E. R. Whitmore, Prosecuting Attorney, and Mark J. Davis and Gail Douglas, Deputies, for respondent.

THOMPSON, J.—This case involves the question of whether police refusal to administer a second Breathalyzer test denies a DWI arrestee the statutory right to obtain "additional tests". We hold it does not under the facts of this case and affirm petitioner's conviction.

On February 22, 1984, Mr. Russell was arrested for DWI and transported to the police station where a Breathalyzer test was administered. Although Mr. Russell was required to blow into the machine several times to activate it, both parties later agreed the machine was not defective. The test resulted in a Breathalyzer reading of 0.16. Because he believed the officer cheated on the test, Mr. Russell requested a second Breathalyzer test from the officer. The request was refused and Mr. Russell telephoned his attorney.

Mr. Russell unsuccessfully moved to have the Breathalyzer results suppressed, and on April 11, 1984, on stipulated facts he was convicted in district court of DWI. Mr. Russell's conviction was affirmed in superior court, and this court granted discretionary review on December 18, 1984.

Mr. Russell claims the denial of a second Breathalyzer test impaired his ability to prepare a defense resulting in a violation of his due process rights under the constitutions

of the United States and the State of Washington. We disagree.

The implied consent law, RCW 46.20.308(1) provides that prior to administering a "test or tests" to a person suspected of driving while intoxicated, "[t]he officer shall inform the person of his . . . right to refuse the test, and of his . . . right to have additional tests administered by any qualified person of his . . . choosing as provided in RCW 46.61.506". RCW 46.61.506(5) provides in part:

> The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer.

The implied consent law, however, does not require the arresting officer, in every case, to give the arrested person a list of the kinds of persons who may be qualified to administer such an additional test. *State v. Richardson,* 81 Wn.2d 111, 499 P.2d 1264 (1972). Responding to the argument that an arrested person might misunderstand the words "qualified person" to mean a law enforcement officer, *Richardson* concluded at pages 115–16 that the word "person" was not synonymous with the word "officer" and such a misapprehension would not be a rational conclusion. Finally, the refusal of the "qualified person" to perform such an additional test at the defendant's request does not affect the admissibility of the "official test" since

> failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.

RCW 46.61.506(5). *State v. Reed,* 36 Wn. App. 193, 196 n.2, 672 P.2d 1277 (1983), *review denied,* 100 Wn.2d 1041 (1984).

Mr. Russell, however, relies on *Blaine v. Suess,* 93 Wn.2d 722, 612 P.2d 789 (1980), and cases cited therein, for his claim that the officer's refusal to administer a second Breathalyzer test interfered with his due process right to

gather evidence. In *Blaine* both parties agreed the defendant must be afforded a reasonable opportunity by the police to obtain additional tests. The issue was whether the police *in fact* provided the arrested person such an opportunity. In reviewing the facts, the court noted that when arrested, defendant was advised of all of his rights including the right to additional tests. He requested additional tests and was informed he would be transported to a local hospital. Instead, he was taken to jail and no additional tests were conducted. The court held the police had unreasonably interfered with the defendant's efforts to obtain the additional tests and reversed his conviction. In contrast, where the police allowed a defendant unrestricted access to the telephone and made arrangements for a technician to draw blood at the jail, it was held the police did not unreasonably thwart defendant's attempts to obtain additional testing. *State v. Reed, supra.*

Here, the stipulated facts are distinguishable from *Blaine v. Suess, supra,* and more analogous to *State v. Reed, supra,* since Mr. Russell was given access to a telephone after the officer refused to administer a second Breathalyzer test and was allowed to call and talk to his attorney. No effort was made by either Mr. Russell or his attorney to have additional tests, although Mr. Russell did continue to insist the officer give him a second Breathalyzer test. Thus, the facts do not support Mr. Russell's premise that he was not afforded a "reasonable opportunity" to gather evidence in his defense.

Mr. Russell, however, claims the "best evidence" with which to prepare a defense is a second Breathalyzer test to check the accuracy of the first test. He further argues because law enforcement officials have a "virtual monopoly" on the use of Breathalyzer machines and the time factor in rendering an accurate test, the police should be required to administer a second test if so requested by the accused. This claim falls within "the area of constitutionally guaranteed access to evidence.'" *See California v. Trombetta,* __ U.S. __, 81 L. Ed. 2d 413, 104 S. Ct. 2528,

2532 (1984).

*Trombetta* addressed the government's duty to take affirmative steps to preserve evidence on behalf of those accused of DWI. The court held the due process clause of the Fourteenth Amendment does not require law enforcement agencies to preserve breath samples in order to introduce breath analysis tests at trial. This is so despite the fact that "preservation of breath samples is technically feasible". *Trombetta,* 104 S. Ct. at 2531. The court stated at page 2534 that to meet the constitutional standard of materiality which requires evidence preservation, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means".

Although the failure of the official to take a second Breathalyzer test can be likened to destruction of evidence, *i.e.,* results of an additional test made virtually under the same conditions were lost to the defendant, the facts of the instant case do not satisfy the *Trombetta* conditions. There is no showing that Mr. Russell was precluded from obtaining other accurate tests, *i.e.,* blood or urine samples, or that the evidence would have been favorable to him. Mr. Russell did not argue the machine was defective, but rather that the official administering the test cheated; thus, if true, a second test would also be subject to the same manipulation.[1] Finally, the issue of whether law enforcement officers should be required to administer a second test appears to be better left to the Legislature.

At least two jurisdictions, California and Wisconsin, have such a procedure. California regulations require the taking of two breath samples which must register within 0.02 of each other in order to be admissible in court, *see People v. Trombetta,* 142 Cal. App. 3d 138, 190 Cal. Rptr. 319, 320–

---

[1]*Trombetta* noted in dicta that if testing equipment were truly prone to erroneous readings, then test results without more might be insufficient to establish guilt beyond a reasonable doubt. However, no such argument has been made here.

21 (1983), *rev'd, California v. Trombetta, supra;* and Wisconsin statutes provide that a defendant "has the right to have a second test at the state's expense or an alternate test to be administered by a qualified person chosen by the defendant at the defendant's expense". *State v. Walstad,* 119 Wis. 2d 483, 526, 351 N.W.2d 469, 490 (1984). In Washington, on the other hand, an "additional" test administered by "any qualified person" of defendant's choosing is deemed to afford adequate protection against faulty or bad faith testing. We question the practicality of such a procedure when a defendant is indigent or jailed during the critical testing period, unable to find a person to give another test, or unable to transport himself to a testing facility. However, Mr. Russell has failed to show he was denied access to "comparable evidence by other reasonably available means". *Trombetta,* 104 S. Ct. at 2534. Thus, we are constrained to agree with the district court judge that, while two Breathalyzer tests are preferable, there is no regulation requiring such a procedure.[2]

Affirmed.

McINTURFF, A.C.J., and MUNSON, J., concur.

---

[2]We note that Washington is in the process of replacing the Breathalyzer test with the BAC Verifier Data Master. State Register 85–08–012 (1985); State Register 85–05–041 (1985). Under this infrared instrument, the procedure for testing a person's breath for alcohol concentration will consist of taking no less than two breath samples. WAC 448–12–220.