[Nos. 52495–5, 52597–8. En Banc. September 24, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. SCOTT STANNARD, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. JOHN APPEL, ET AL, *Petitioners.*

*Jon Ostlund* and *Robert S. Jones* of *Whatcom County Public Defender Association* and *Rolf Beckhusen,* for petitioners.

*David S. McEachran, Prosecuting Attorney,* and *Robert A. Carmichael, Deputy,* for respondent.

CALLOW, J.—This case involves the right of a person suspected of driving while under the influence of intoxicating liquor to have a second Breathalyzer test performed at the suspect's request contemporaneously with the one performed at the request of the arresting officer. The defendants assert that such a right is guaranteed either by RCW 46.20.308(2) and 46.61.506 or by article 1, section 22 of the Washington State Constitution. We hold that the right to a second Breathalyzer test is neither statutorily or constitutionally guaranteed.

John Appel was arrested for driving while under the influence of intoxicating liquor (DWI) in Whatcom County on September 6, 1984. He was read his *Miranda* rights by

the state trooper who made the arrest and was permitted to call his attorney prior to taking the Breathalyzer test. His attorney advised him to request a second breath test, which he did. The officer took the telephone and advised Mr. Appel's attorney that he would not administer a second Breathalyzer test, noting that some jurisdictions administer second tests upon request, but that local policy was to deny such requests. Mr. Appel took the Breathalyzer test with a resultant reading of .13 percent blood alcohol content.

John Appel's motion to dismiss and/or suppress evidence of the single Breathalyzer test in Whatcom County District Court was denied. Appel obtained a writ of review. The matter was considered by the Superior Court, and an order affirming the District Court was entered thereafter.

Patricia Harding was arrested in Whatcom County on February 28, 1985, also as a DWI suspect. She was read her *Miranda* rights, called her attorney, and requested a second Breathalyzer test. The arresting officer, a different state trooper than the one who had arrested John Appel, refused to conduct a second breath test on the grounds that it was against local policy. Ms. Harding took the Breathalyzer test, with a reading of .16 blood alcohol content. She claims that she had not consumed sufficient alcohol to produce such a reading. Mr. Raymond Davis, an expert in the interpretation of blood alcohol levels, testified that the amount of alcohol Ms. Harding claims to have consumed would have produced a blood alcohol content of no more than .06 percent. Mr. Davis also testified that a second breath test administered contemporaneously with the first is necessary to ensure the accuracy of the first test.

Patricia Harding's motion to dismiss and/or suppress evidence in Whatcom County District Court was denied. She obtained a writ of review to the Superior Court and an order affirming the District Court was entered thereafter.

Scott Stannard was arrested as a DWI suspect on May 6, 1984. He was read his *Miranda* rights, called an attorney, and requested that a second Breathalyzer test be given by the arresting officer, a third state trooper. Mr. Stannard

submitted to the Breathalyzer test, but hyperventilated prior to taking it. The arresting trooper refused to administer a second Breathalyzer test, stating that local policy was to administer the test only once. Mr. Stannard was transported to Whatcom County Jail by yet another state trooper to whom he repeated his request for a second Breathalyzer test. Stannard claims to have requested a blood test as well, which claim is denied by the transporting trooper. Stannard claims that when he was booked in jail he again requested a second Breathalyzer test and a blood test, neither of which was given.

Mr. Stannard's motion to dismiss and/or suppress Breathalyzer results was denied in the Whatcom County District Court. The court made specific findings that Stannard did request a second Breathalyzer test, but did not clearly request a blood test. Stannard was found guilty of driving while under the influence based upon the stipulated admission of the police reports. He appealed to the Superior Court where the conviction was affirmed.

Mr. Stannard thereafter filed a notice for discretionary review with the Court of Appeals. The motion was denied by the court commissioner and a motion to modify the commissioner's ruling was denied by the Court of Appeals. Discretionary review was sought in this court. We ultimately permitted review and consolidated the cause with State v. Appel and State v. Harding by an order entered June 4, 1986.

Before being asked to submit to the Breathalyzer test, each of the defendants was read the following "implied consent warnings":

> You are under arrest for driving a motor vehicle while under the influence of intoxicating liquor. Further, you are now being asked to submit to a chemical test of your breath to determine the alcoholic content of your blood. You are now advised that you have the right to refuse this breath test; that if you refuse, your privilege to drive will be revoked or denied by the Department of Licensing; and that *you have the right to additional tests administered by a qualified person of your own choos-*

*ing,* and at your own expense and that your refusal to take the test may be used against you in a subsequent criminal trial.

(Italics ours.) These warnings are statutorily required under former RCW 46.20.308, which in 1980 provided in pertinent part:

> Implied consent—Revocation, etc., for refusal to submit to chemical tests to determine alcoholic content of blood. (1) Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of RCW 46.61-.506, to a chemical test or tests of his breath or blood for the purpose of determining the alcoholic content of his blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506. The officer shall warn the driver that his privilege to drive will be revoked or denied if he refuses to submit to the test. Unless the person to be tested is unconscious, the chemical test administered shall be of his breath only. . .

This provision was amended in 1983, effective January 1, 1985, to read as follows:

> Implied consent—Revocation, etc., for refusal to submit to chemical tests to determine alcoholic content of blood. (Effective January 1, 1985.) (1) Any person who operates a motor vehicle within this state is deemed to have given consent, subject to the provisions of RCW 46.61.506, to a chemical test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her blood if arrested for any offense where, at the time of the arrest, the arresting officer has

reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

(2) The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor. *The officer shall inform the person of his or her right to refuse the test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506.* The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, (b) that his or her privilege to drive will be suspended, revoked, or denied if the test is administered and the test indicates a concentration of alcohol in his or her blood of 0.10 percent or more, and (c) that his or her refusal to take the test may be used against him or her in a subsequent criminal trial.

(3) Except as provided in this subsection and subsection (4) of this section, the chemical test administered shall be of the breath only.

(Italics ours.)

Former RCW 46.61.506 provides, in pertinent part:

(3) Chemical analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.502 or 46.61.504 shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. . . .

. . .

(5) The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests *in addition to any administered at the direction of a law enforcement officer.* The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.

(Italics ours.)

The defendants argue that the import of these statutes is

to create in DWI suspects a right to have additional tests of blood alcohol content performed by any qualified person, including the police officer who performed the initial Breathalyzer test at the request of the arresting officer. We disagree.

 The intent of former RCW 46.61.506(5) is to afford a DWI suspect the opportunity to obtain evidence with which to impeach the results of a single Breathalyzer test, if such evidence exists. The suspect also takes the risk that the second test will verify and substantiate the results of the first. The statute strikes an appropriate balance between the rights of the accused to gather evidence in his own defense and the need to avoid undue burdens upon the State. The accused is given the right to choose the type of additional chemical test to be administered and the person to perform the test, so long as that person is available, willing and "qualified" to do so by being on the statutory list.

The State argues that the right of a DWI suspect to obtain additional chemical tests of blood alcohol content should not allow a suspect to "compel" a police officer to administer the test, equating such compulsion to a hypothetical rule requiring that a doctor or nurse of the suspect's choosing be furnished to administer a blood test. We agree. The doctor, nurse or other qualified person could not be forced to appear and perform a test at the behest of a DWI suspect and the statute does not require the police officer to repeat a Breathalyzer test to insure its accuracy. An officer who has just administered a Breathalyzer test for the purpose of collecting evidence on behalf of the State is qualified by virtue of having been licensed by the state toxicologist to administer the Breathalyzer, and is available to readminister the test. However, when a DWI suspect requests an officer to administer an additional test of blood alcohol content, the officer is not required to do so under the statutory scheme of RCW 46.20.308(2) and RCW 46.61.506(5). The statute gives the accused the right to seek out someone in the group enumerated in RCW 46.61.506(5)

to perform a second test, but police officers are not included within the group enumerated by the Legislature.

Police officers must not impede the efforts of an accused to secure a second test, but our holding in *Blaine v. Suess,* 93 Wn.2d 722, 612 P.2d 789 (1980) did not require law enforcement officers to perform the tests themselves. *Blaine* noted that a defendant is entitled to a reasonable opportunity to gather evidence in his defense and whether he was granted that opportunity "depends heavily on the particular circumstances." *See also State v. Reed,* 36 Wn. App. 193, 672 P.2d 1277 (1983). The rule permits a *reasonable* opportunity to gather evidence and the statutory scheme provides that reasonable opportunity by permitting the accused to secure outside tests.

Statutes should be construed to effect their purpose and unlikely, absurd or strained consequences should be avoided. *State v. Richardson,* 81 Wn.2d 111, 499 P.2d 1264 (1972). Former RCW 46.61.506 did not expressly grant the right to have an additional "test or tests" administered by anyone except the enumerated list of qualified persons, *i.e.,* physicians, technicians, chemists, nurses or other qualified persons. *State v. Richardson, supra* at 116, discussing the right to have additional tests stated:

> We cannot agree with these assumptions. The language which the people themselves used in describing the right in question, in RCW 46.20.308, is sufficiently clear to give to a person of average mentality the understanding that *he may have his own tests made if he fears the accuracy or fairness of the test to be given by law enforcement officers.* It is this information which he needs in order to make his decision whether to submit to a test, and it, plus the information that his license will be revoked or denied if he refuses, is all that is necessary to the exercise of an intelligent judgment upon that question.

(Italics ours.)

We read the two statutes together and hold that under RCW 46.20.308(2) and 46.61.506(5) a person accused of driving while under the influence of intoxicating liquor is not entitled, upon request, to have a second Breathalyzer

test administered by the officer who performs the initial Breathalyzer test. *State v. Russell,* 41 Wn. App. 391, 704 P.2d 1214 (1985).

 Finally, we consider the constitutional aspects of the issue. A defendant charged with a crime has a right to have material evidence preserved for use at trial. *Brady v. Maryland,* 373 U.S. 85, 10 L. Ed. 2d 215, 83 S. Ct. 1114 (1963); *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976). The due process clause guarantees the preservation of material evidence and to meet this standard of materiality the evidence must both (1) possess an exculpatory value that was apparent before the evidence was destroyed, and (2) must be of such a nature that the evidence would be unobtainable by other reasonably available means. *California v. Trombetta,* 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984); *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976).

It is apparent that evidence which is merely cumulative cannot be material. Further, the evidence has to be shown to have been exculpatory in order to meet the constitutional standard of materiality. At best, whether the results of a second test would be exculpatory or incriminating can be no more than speculative and, therefore, of questionable assistance to the defendant. *California v. Trombetta, supra* at 488–89, stated:

> More importantly, California's policy of not preserving breath samples is without constitutional defect. Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States* v. *Agurs,* 427 U. S. at 109–110, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case.
>
> Although the preservation of breath samples might conceivably have contributed to respondents' defenses, a

dispassionate review of the Intoxilyzer and the California testing procedures can only lead one to conclude that the chances are extremely low that preserved samples would have been exculpatory. . . . Once the Intoxilyzer indicated that respondents were legally drunk, breath samples were much more likely to provide inculpatory than exculpatory evidence.

(Footnote omitted.) Justice O'Connor, in concurring, stated succinctly, at pages 491–92:

The failure to preserve breath samples does not render a prosecution fundamentally unfair, and thus cannot render breath–analysis tests inadmissible as evidence against the accused. . . . Similarly, the failure to employ alternative methods of testing blood–alcohol concentrations is of no due process concern, both because persons are presumed to know their rights under the law and because the existence of tests not used in no way affects the fundamental fairness of the convictions actually obtained.

The principles stated in regard to the preservation of evidence for the defense of an accused apply equally to the securing of evidence by an accused. Evidence must be shown to be both material and exculpatory in order for it to be fundamentally unfair to deny defendant the opportunity to present it in his defense.

There is no showing that any of the defendants were prevented from seeking and securing an alternative test as provided under former RCW 46.61.506. Further, it has not been shown that the securing of a second Breathalyzer test would have been exculpatory.

The cases of State v. Appel and State v. Harding are remanded for trial with the State permitted to offer in evidence the results of the Breathalyzer tests conducted of the accuseds. The conviction of Scott Stannard is affirmed.

BRACHTENBACH, DOLLIVER, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.

UTTER, J. (concurring in the result)—I agree with the majority that RCW 46.20.308 and RCW 46.61.506 do not

require an arresting officer to administer a second Breathalyzer test to a DWI arrestee. United States Supreme Court precedent and case law from our own jurisdiction are consistent on that point. However, our statutory scheme should not be interpreted to grant law enforcement officers some constitution–like right not to perform official duties. The conclusion that the arresting/testing officer is not required to administer a second test under the statutory scheme is correct, but we should not arrive at that conclusion by cloaking it with a nonspecific constitutional right. The statute's plain meaning confers the right to *additional* tests administered by other qualified people. The accused *lacks* the right to have that officer administer the test, but has the statutory right to a different test.

RCW 46.61.506 enumerates the "qualified persons" who may administer additional tests to DWI suspects. These are people issued permits to perform the task by the state toxicologist: physicians, qualified technicians, chemists, registered nurses, or other such licensed persons. The right to a test by an alternative method administered by a different qualified person makes practical sense. If the accused's objection to the officer's test is that the machine is malfunctioning or the officer is conducting the test in bad faith, the same result would obtain in a second test with the same officer and machine.

In *Blaine v. Suess,* 93 Wn.2d 722, 612 P.2d 789 (1980) this court unanimously held that a person accused of driving while under the influence of alcohol is entitled to a reasonable opportunity to gather evidence in his or her defense, and prohibited police officers from impeding the efforts of an accused to secure a second test. *Blaine* further provided that whether a defendant was afforded that opportunity depends on the particular circumstances of the case. In *Blaine,* the defendant was a Swiss national with poor English skills. It was undisputed that he communicated to the officers that he wished additional testing, and that they informed him they would take him to a hospital. He reiterated his request en route, but was told he was

being taken to the jail where there was no testing facility. "Since petitioner was in custody, he had no realistic opportunity to be tested except by stating his wish to the authorities." *Blaine,* at 727. The conviction was reversed and the case dismissed.

The majority cites *Blaine* and notes that "[t]he rule permits a *reasonable* opportunity to gather evidence and the statutory scheme provides that reasonable opportunity by permitting the accused to secure outside tests." Majority, at 36. It is important to note that the statute affirmatively confers the right upon DWI suspects to obtain additional testing from a qualified person, and requires arresting officers to inform suspects of that right.

To assume that persons under custodial arrest being transported to a jail by police officers would comprehend that they can require the officer to detour to the hospital in the brief and crucial time in which another test would yield results indicative of their blood alcohol content is to stretch credulity to the breaking point. As the majority correctly notes, statutes should be construed to effect their purpose, and unlikely, absurd or strained consequences should be avoided. *State v. Richardson,* 81 Wn.2d 111, 499 P.2d 1264 (1972). In obliging the police in RCW 46.20.308 to inform suspects of their right to an additional test, I do not believe the Legislature intended to bestow a miserly and begrudging right to be informed of a prerogative that could only be implemented by incanting a specific and particular phrase.

Under somewhat analogous circumstances, the United States Supreme Court has required the police to inform suspects under custodial arrest of their Fifth Amendment privileges and that, regardless of their financial status, they can avail themselves of these rights. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). A complete and meaningful warning is "an absolute prerequisite in overcoming the inherent pressures *of the interrogation atmosphere." Miranda,* 384 U.S. at 468. While the rights involved in *Miranda* are basic constitutional ones, and the warnings of the police are accordingly

more thoroughgoing, the statements by the Court concerning their import in a custodial arrest situation apply with equal force to the statutory rights at issue here.

The arrestees must be informed in a meaningful manner of those rights at the point where they are in custody and have expressed their desire to implement them. When a suspect has been given the warnings required by RCW 46.20.308, has submitted to a Breathalyzer test, and has requested a second test, the arresting officer must inform him of his option to have that test performed at his own expense by a qualified person at a hospital.

PEARSON, C.J., concurs with UTTER, J.

DORE, J. (dissenting)—The majority correctly points out that the purpose of former RCW 46.61.506(5)

is to afford a DWI suspect the opportunity to obtain evidence with which to impeach the results of a single Breathalyzer test, if such evidence exists. The suspect also takes the risk that the second test will verify and substantiate the results of the first. *The statute strikes an appropriate balance between the rights of the accused to gather evidence in his own defense and the need to avoid [placing] undue burdens upon the State.*

(Italics mine.) Majority, at 35. Nevertheless, the majority proceeds to ignore this stated purpose of RCW 46.61.506(5), and instead relies on faulty analogies and readily distinguishable cases to reach an absurd and illogical result. I dissent.

## PURPOSE OF RCW 46.61.506(5)

The majority claims that to compel a police officer to perform a second Breathalyzer test is analogous to compelling a doctor, nurse or other qualified individual to perform a blood test at the suspect's request. This is ridiculous. Undoubtedly it would be an infringement on a doctor's or nurse's constitutional rights to be forced to test a suspect accused of drunk driving. I fail, however, to see any infringement on an on–duty police officer's rights by having

the officer repeat a Breathalyzer test to ensure that the original test was accurate. In the ordinary course of a police officer's employment, he or she routinely performs numerous tasks for the benefit of private citizens, not the least of which is the protection of the rights of accused individuals.

Moreover, requiring a second test is in accordance with the purpose stated—and subsequently ignored—by the majority. An uncontradicted affidavit submitted to this court indicated that approximately half of all Breathalyzer readings were invalidated when a second measurement was taken, due to the large disparity between the two readings. Brief of Appellant, app. A, at 31. To require an officer who has just taken a Breathalyzer reading to check that reading with a second test is a very minor burden indeed. When this burden is balanced against the right of the accused to challenge what he or she believes to be a false reading, I believe the inescapable conclusion is that the balance swings decidedly in favor of the accused. I believe RCW 46.61.506(5) requires the officer to perform a second test if requested by the accused.

The majority cites the decision in *California v. Trombetta,* 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984) and *United States v. Agurs,* 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392 (1976) for the proposition that the State must preserve material evidence that (1) possesses an apparent exculpatory value, and (2) is not otherwise obtainable by reasonably available means. Majority, at 37. The majority, however, inexplicably concludes that "[a]t best, whether the results of a second test would be exculpatory or incriminating can be no more than speculative and, therefore, of questionable assistance to the defendant." Majority, at 37. I do not follow this reasoning. Surely the majority is aware that a second test may invalidate an inaccurate first reading. Moreover, it may aid the prosecution, as it may corroborate the results of the first test, a result which can be highly significant if the accused's blood alcohol content is just over .10 percent.

CONCLUSION

The State Toxicologist Vidmantas A. Raisys has recommended that accuseds be given two Breathalyzer tests. In a letter describing the new Breathalyzer machines sent to prosecutors, sheriffs, police chiefs, and the State Patrol, the toxicologist stated

it is important that for both tests that deep lung air is provided. *If the two tests are administered properly, the two tests will agree within reasonable limits.*

Brief of Appellant, app. B, at 27. The state toxicologist, a trained scientist, implicitly recognizes the Breathalyzer test can be inaccurately administered and a second breath test is a useful method of ensuring reliability of the first reading. Apparently, the majority is unable to comprehend this.

I dissent. I believe the Whatcom County police officers' failure to administer second blood tests to these individuals violated their rights to gather exculpatory evidence. I would suppress the evidence of the first Breathalyzer tests.