**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

APRIL 30, 2026

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 30, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 103058-4 |
| | ) | |
| v. | ) | |
| | ) | En Banc |
| DUSTIN GENE ABRAMS | ) | |
| | ) | Filed: <u>April 30, 2026</u> |
| Petitioner. | ) | |
| | ) | |
| | ) | |

MADSEN, J.P.T.*—At issue in this case is whether RCW 9.94A.640 allows a trial court to grant vacatur applications from individuals seeking to vacate a conviction while still incarcerated. We hold that subsection (2) of the statute does not permit individuals to seek vacatur when they have never been released from confinement. We also hold that applicants for vacatur must present evidence of rehabilitation pursuant to our recent decision in *State v. Hawkins*, 200 Wn.2d 477, 497, 519 P.3d 182 (2022), which requires courts to consider, among other things, "whether to clear the record of conviction based on the level of rehabilitation."

---

*Justice Barbara Madsen is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

Here, Dustin Abrams has spent no time "crime free" in the community, thus he is ineligible for vacatur, nor did Abrams provide evidence of rehabilitation in his vacatur application. We therefore affirm the Court of Appeals in part and reverse in part.

BACKGROUND

In 2004, Abrams pleaded guilty to multiple counts of theft of a firearm and theft in the first and second degree. Abrams received a sentence of 30 months of confinement and was required to pay legal financial obligations. The victim of these thefts was killed. During Abrams's sentence for the 2004 convictions, the State obtained evidence that Abrams committed the murder, and he later pleaded guilty to the murder. Abrams completed his sentence for the 2004 thefts but remains in prison for the murder charge.

In 2022, Abrams moved for vacatur of the 2004 convictions. Clerk's Papers (CP) at 90-91. The superior court denied the motion, reasoning that the requisite number of years had not passed following Abrams's release from confinement for all convictions. CP at 100; RCW 9.94A.640(2)(e). Abrams sought review of the denial of his motion to vacate. The Court of Appeals concluded that the trial court misread the statute, which requires only that a certain number of years must pass for the offense(s) sought to be vacated and not for all offenses for which an individual is incarcerated. *State v. Abrams*, No. 39048-9-III, slip op. at 11-14 (Wash. Ct. App. Apr. 9, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/390489_unp.pdf. The Court of Appeals further held that a court may vacate convictions after considering evidence of rehabilitation, which Abrams did not provide. *Id.* at 15. The court affirmed the denial of the motion to

vacate but noted that it was without prejudice, thus, Abrams could refile with evidence of rehabilitation. *Id.* at 15-16.

Abrams sought review in this court. He argued that the Court of Appeals correctly interpreted the vacatur statute but erred by refusing to remand the case to the trial court to rule on the merits of his vacatur motion based on the lack of rehabilitation evidence. Pet. for Rev. at 3. The State agreed with the Court of Appeals that rehabilitation evidence is required and urged this court to deny review, but it cross-petitioned on the issue of whether the vacatur statute requires release from confinement on all convictions and not just those for which vacatur is sought. Answer to Pet. for Rev./Cross Pet. for Rev. at 1, 5-10. We granted review of both petitions.

ANALYSIS

We first address the State's petition challenging the Court of Appeals' interpretation of RCW 9.94A.640(2)(e). Abrams and the State disagree about the meaning of the vacatur statute, specifically whether RCW 9.94A.640(2)(e) requires an applicant to be released from custody on *all* offenses or only for those sought to be vacated. We begin by examining the mechanism of vacatur and its statutory context.

RCW 9.94A.640 authorizes individuals with certain convictions to "apply to the sentencing court for a vacation of the . . . record of conviction." Vacatur allows individuals to state they were never convicted of the offense for purposes of employment and releases them "from all penalties and disabilities resulting" therefrom. RCW 9.94A.640(4)(a). For example, once a record of conviction is vacated, the fact of the

3

offense is not included in the applicant's criminal history for determining a sentence for any subsequent conviction. *Id.*

Individuals seeking vacatur must satisfy certain statutory preconditions. An applicant must first obtain a certificate of discharge. RCW 9.94A.640(1); RCW 9.94A.637.[1] Defendants who complete the requirements of their sentence are "entitled to a discharge as a matter of statutory right." DAVID BOERNER, SENTENCING IN WASHINGTON § 11.2(a) at 11-1 (1985). Prior to the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, the discharge procedure was discretionary and required a defendant to request it. *Id.* Discharge pursuant to RCW 9.94A.637 is now self-executing. *Id.* Discharge is not "based on a finding of rehabilitation," and a trial judge's decision to grant it is ministerial. RCW 9.94A.637(9).

In contrast to discharge, vacatur is "significantly different." BOERNER, *supra*, § 11.4(a) at 11-4. Unlike discharge, vacatur has historically been interpreted as discretionary with the sentencing judge. *E.g.*, *Hawkins*, 200 Wn.2d at 491; BOERNER, *supra*, § 11.4, at 11-4. And, unlike discharge, the purpose of the vacatur statute is rehabilitation. We have explained that the statute is "'a legislative expression of public policy' that a 'deserving offender' should be restored to [their] 'preconviction status as a full-fledged citizen.'" *Hawkins*, 200 Wn.2d at 495 & n.12 (internal quotation marks

---

[1] RCW 9.94A.637(1) provides, in part, "When an offender has completed all requirements of the sentence, including any and all legal financial obligations, and while under the custody or supervision of the department [of corrections], the secretary or the secretary's designee shall notify the sentencing court, which shall discharge the offender and provide the offender with a certificate of discharge."

omitted) (quoting *State v. Breazeale*, 144 Wn.2d 829, 837, 31 P.3d 1155 (2001)); *see also* BOERNER, *supra*, § 11.6(a) at 11-8 (vacatur "was intended to be the equivalent of a finding of rehabilitation").

To that end, RCW 9.94A.640(2) lists disqualifications that "exclude would-be applicants who have not rehabilitated." *Hawkins*, 200 Wn.2d at 490. Subsection (2) precludes vacation if any criminal charges are pending in any state or federal court, the offense is one of the listed felonies, the applicant has committed a new crime since discharge, or less than 5 or 10 years have passed depending on the class of felony. RCW 9.94A.640(2)(a)-(g).

In short, vacatur is a two-step process. A sentencing court determines (1) whether applicants have satisfied the statutory preconditions and, if so, (2) whether to clear the record of conviction. RCW 9.94A.640(1)-(2). With these considerations in mind, we turn to the issues before us.

1. Abrams is not eligible to seek vacatur because he has not been released from confinement

As noted, the State contends that Abrams cannot seek vacatur because he remains in confinement; that is, he has never been released from custody since the conviction for the offenses he seeks to vacate.

Abrams was convicted of theft as both class B and class C felonies more than a decade ago. He sought to vacate those convictions while incarcerated on a murder charge. A conviction cannot be vacated if "the offense" is a class B or C felony and less than 5 or 10 years have passed, respectively, "since the later of: (i) The applicant's

release from community custody; (ii) the applicant's release from *full and partial confinement*; or (iii) the applicant's sentencing date." RCW 9.94A.640(2)(e)-(f) (emphasis added).

Central to this issue is the meaning of "full and partial confinement." *Id*. This is a question of statutory interpretation, which we review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). The primary objective of statutory interpretation is to "ascertain and carry out the Legislature's intent." *Id*. If the meaning of the statute is plain on its face, we give effect to that plain meaning as an expression of legislative intent. *Id*. at 9-10. A statute's plain meaning is derived from inquiring into "all that the Legislature has said in the statute and related statutes." *Id*. at 11.

"In undertaking this plain language analysis, the court must remain careful to avoid 'unlikely, absurd or strained' results." *Burton v. Lehman*, 153 Wn.2d 416, 423, 103 P.3d 1230 (2005) (quoting *State v. Stannard*, 109 Wn.2d 29, 36, 742 P.2d 1244 (1987)). We should interpret statutes "to further, not frustrate, their intended purpose." *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 99, 864 P.2d 937 (1994). We read statutory provisions in relation to each other and in harmony where possible, under the assumption that the legislature does not intend to create inconsistency. *State ex rel. Peninsula Neigh. Ass'n v. Dep't of Transp.*, 142 Wn.2d 328, 342, 12 P.3d 134 (2000).

As noted above, subsection (2) states that a felony conviction cannot be vacated if less than 5 or 10 years have passed since "the applicant's release from full and partial confinement." RCW 9.94A.640(2)(e)(ii), (f)(ii). "Confinement" is a term of art defined

by the SRA to mean "total or partial confinement." RCW 9.94A.030(8). "Partial confinement" is defined as "confinement up to 18 months in a [state] facility or institution . . . home detention, electronic monitoring, or work crew . . . [or] work release." RCW 9.94A.030(35). "Total confinement" is defined as "confinement inside the physical boundaries of a [state] facility or institution . . . for 24 hours a day." RCW 9.94A.030(52).

While "total confinement" is included in the SRA's definition of "confinement," the vacatur statute uses the term "*full*" and not "total." RCW 9.94A.640(2)(e)-(f) (emphasis added). The SRA does not define "full," thus, we may consult a dictionary to determine its plain and ordinary meaning. *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 519, 91 P.3d 864 (2004). *Webster's* defines "full" as "ENTIRELY, COMPLETELY" and to "the highest or fullest state, condition, or degree." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 919 (2002); *see also* MERRIAM-WEBSTER'S ONLINE DICTIONARY (defining "full" as "complete especially in detail, number, or duration").[2] We presume the legislature says what it means and means what it says—the use of "full" to modify "confinement" was intentional. *See State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004).

A conviction cannot be vacated if the prescribed number of years have not passed since an applicant was released from "full," that is, *complete* confinement, which includes partial and total confinement. The inclusion of the term "full" to describe

---

[2] https://www.merriam-webster.com/dictionary/full (last visited Jan. 27, 2026).

confinement indicates the legislature intended release from all or complete confinement. Therefore, RCW 9.94A.640(2)(e) and (f)'s requirement that an applicant be released from *full* confinement must refer to *all* convictions for which the applicant is in confinement, not just those sought to be vacated.

This reading of RCW 9.94A.640(2) aligns with the rule exhorting courts to interpret statutes to further, and not frustrate, their intended purpose. *Burnside*, 123 Wn.2d at 99. The purpose of the vacatur statute is restoring "'deserving offender[s]'" to their preconviction status as citizens. *Hawkins*, 200 Wn.2d at 495 (internal quotation marks omitted) (quoting *Breazeale*, 144 Wn.2d at 837). Inherent in that purpose is the notion that prior to a conviction, citizens live in their community crime free. Restoration to that status by vacatur implies that an applicant has lived in their community without committing additional offenses. One of the goals of the SRA is protecting the public. *Id*. Allowing individuals to apply for vacatur who have not lived crime free in society for any length of time, let alone the required 10 years, does not further that goal. Interpreting vacatur to require an applicant's release from complete custody on all convictions before seeking vacatur does further these purposes. *See Burnside*, 123 Wn.2d at 99.

Abrams urges us to come to the opposite conclusion by applying various grammatical rules, such as the use of the term "the" in describing class B or C offenses, the series-qualifier rule, and recognition that lawmakers could have but did not use the term "any" when describing "the offense." Suppl. Br. of Pet'r at 15-20.

While a plain meaning analysis includes scrutinizing the structure and terms of a statute, parsing a single word in a single provision should not replace the goal of statutory

8

interpretation—to discern legislative intent.  Part of that process is harmonizing conflicting statutes and avoiding strained results.  *Burton*, 153 Wn.2d at 423; *Millay v. Cam*, 135 Wn.2d 193, 199, 955 P.2d 791 (1998).

Abrams's interpretation conflicts with related statutes rather than harmonizes them, leading to anomalous results.  *See Peninsula Neigh. Ass'n*, 142 Wn.2d at 342.  As the State points out, this interpretation of RCW 9.94A.640(2)(e) and (f) precludes offenders with community custody conditions from applying for vacatur until they complete those conditions after their release from confinement.  Abrams's approach would treat crimes with community custody conditions less favorably than those without such a requirement.

The Court of Appeals acknowledged this "excellent point" raised by the State but held that a literal application of grammar to RCW 9.94A.640(2) was the correct approach.  *Abrams*, No. 39048-9-III, slip op. at 14.  The court reasoned that crimes without community custody conditions are "typically" less harmful to the general public, and so the legislature could legitimately distinguish them for vacatur.  *Id*.  The statutory context does not support the court's reasoning.  For example, violent offenses like second degree assault fall under RCW 9.94A.640(2).  Second degree assault can cause substantial bodily harm and carries community custody conditions.  RCW 9A.36.021(1)(a) ("A person is guilty of assault in the second degree if [they] . . . [i]ntentionally assault[] another and thereby recklessly inflict[] substantial bodily harm."); RCW 9.94A.701(2) (imposing 18 months of community custody for violent offenses); RCW 9.94A.030(58)(a)(viii) (a "violent offense" includes "[a]ssault in the

second degree"). The inclusion of crimes that can cause significant harm and carry custody conditions indicates the legislature did not intend to distinguish them for purposes of vacatur.

Accepting Abrams's interpretation also creates a conflict with the SRA's washout provision, RCW 9.94A.525. *See* Suppl. Br. of Resp't/Cross Pet'r at 9-11. When a conviction is vacated, the fact of an offender's conviction "shall not be included in the offender's criminal history for purposes of determining a sentence in any subsequent conviction." RCW 9.94A.640(4)(a). Class B felony convictions, other than sex offenses, are not included in an offender score if "the offender had spent 10 consecutive years *in the community* without committing any crime that subsequently results in a conviction." RCW 9.94A.525(2)(b) (emphasis added).

Under Abrams's interpretation, applicants who completed their sentence on one charge but remain incarcerated could apply for vacatur but *not* washout. But vacatur provides significantly more relief than washout, not only removing it from an offender's criminal history (washing out) but eliminating the *record* of the conviction for almost all purposes. *See* RCW 9.94A.640(4). Thus, an offender can apply for the greater relief of vacatur but not the lesser relief of washout. We do not believe that the legislature intended such results. *See Burton*, 153 Wn.2d at 423.

Even if Abrams's technical interpretation is reasonable, at best it shows only that RCW 9.94A.640(2)(e) and (4) are ambiguous. *Cerrillo v. Esparza*, 158 Wn.2d 194, 203-04, 142 P.3d 155 (2006) (holding that a statute is ambiguous if it is susceptible to two or more reasonable interpretations). If a statute is ambiguous, we may look to legislative

history and the circumstances of its enactment to determine legislative intent. *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 306, 268 P.3d 892 (2011).

The legislative history reflects the understanding that applicants may apply for vacatur after they have been released from confinement for all convictions. The language at issue in RCW 9.94A.640(2)(e) and (f) was added in 2019's new hope act. LAWS OF 2019, ch. 331, § 3. The house bill report on the enacting legislation states that "the crime-free period should be calculated from when the person is released *from custody* and supervision." H.B. REP. ON H.B. 1041, at 5, 66th Leg., Reg. Sess. (Wash. 2019) (emphasis added). The testimony from Representative Irwin, one of the cosponsors of the act, echoes the bill report in explaining that the measure "recognize[s] that folks that *stay out of the system* for a decade plus have turned their life around, it gives them a chance to start over." Hr'g on H.B. 1041 Before the H. Pub. Safety Comm. (Hr'g on H.B. 1041), 66th Leg., Reg. Sess. (Wash. Jan. 24, 2019), at 28 min., 11 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/house-public-safety-committee-2019011221/?eventID=2019011221 (emphasis added). The bill report and cosponsor's statement indicate that the crime-free time periods for vacatur begin when the applicant is released from state custody and remains out of the justice system. In short, the applicant has been released into the community. The legislative history does not contemplate eligibility for vacatur for an offender who has never been released from custody.[3]

---

[3] Abrams claims that even if the language at issue is ambiguous, the rule of lenity requires adopting his view. But the rule is not an automatic pass to interpret a statute in favor of a

2. Rehabilitation Evidence is Required

Next we turn to Abrams's petition. Abrams challenges the Court of Appeals holding that evidence of rehabilitation is a prerequisite to vacatur, arguing that the plain language of RCW 9.94A.640(1) does not require such evidence. Pet. for Rev. at 4-6; Suppl. Br. of Pet'r at 33-36; *Abrams*, No. 39048-9-III, slip op. at 1, 15. But this court stated in *Hawkins* that courts must consider, among other things, "whether to clear the record of conviction based on the level of rehabilitation." 200 Wn.2d at 495. Taken together, Abrams's view of RCW 9.94A.640(1) and *Hawkins* would require a trial court to consider rehabilitation evidence even though it is unnecessary, while recognizing that courts have full discretion when deciding a vacatur motion regardless of whether rehabilitation evidence was presented.

In our view, the root of this issue is the scope of discretion pursuant to RCW 9.94A.640(1). That provision reads, in part:

> [T]he court *may* clear the record of conviction *by*: (a) Permitting the offender to withdraw the offender's plea of guilty and to enter a plea of not guilty; or (b) if the offender has been convicted after a plea of not guilty, by the court setting aside the verdict of guilty; and (c) by the court dismissing the information or indictment against the offender.

(Emphasis added.) The language giving rise to a court's discretion is "may." *Id.*

---

criminal defendant. The rule of lenity does not require "'a forced, narrow, and over-strict construction should be applied to defeat the obvious intent of the legislature.'" *State v. McGee*, 122 Wn.2d 783, 796, 864 P.2d 912 (1993) (Brachtenbach, J., concurring) (quoting *State v. Rinkes*, 49 Wn.2d 664, 667, 306 P.2d 205 (1957)). The language and purpose of the vacatur statute and the SRA, as well as the legislative history, demonstrate the legislature's intent to begin calculating a vacatur applicant's crime-free time from release from confinement for all convictions.

The use of the word "may" in subsection (1) is reasonably subject to two interpretations. First, if a court's discretion is limited to the *mechanism* for clearing a conviction as outlined in subsection (1)(a)-(c), then extrinsic evidence of rehabilitation is not required. An applicant who satisfies the statutory requirements for vacatur demonstrates rehabilitation and a judge's final decision on that application is ministerial. Under a second possible interpretation, if a court has full discretion to grant or deny a motion, then we must provide guidance to courts in exercising that discretion. *See Hawkins*, 200 Wn.2d at 494 ("[O]ur role is to provide guidance to courts in exercising their discretion under the statute.").

While both interpretations are plausible, this court has already decided that RCW 9.94A.640(1) provides for full discretion. *Id.* at 491 ("the statute states that 'the court *may* clear the record of conviction.' The legislature's use of the word 'may' constitutes a clear grant of discretion to the trial court." (citation omitted) (quoting RCW 9.94A.640(1)); *see also* BOERNER, *supra*, § 11.4(a) at 11-4 ("'Vacation' . . . is discretionary with the sentencing judge."). Additionally, related statutes and lawmakers' commentary on the vacatur provision indicate that the legislature intended courts to have full discretion on vacatur motions.

The provision on termination and vacation of a suspended sentence provides:

Upon termination of a suspended sentence . . . , the person may apply to the sentencing court for a vacation of the person's record of conviction under RCW 9.94A.640. The court *may*, *in its discretion*, clear the record of conviction if it finds the person has met the equivalent of the tests in RCW 9.94A.640(2).

RCW 9.92.066(2)(a) (emphasis added). Similarly, RCW 9.95.240(2)(a) states that after a probation period has expired, the defendant may apply to the sentencing court to vacate the "record of conviction under RCW 9.94A.640. The court *may*, *in its discretion*, clear the record of conviction if it finds the defendant has met the equivalent of the tests in RCW 9.94A.640(2)." (Emphasis added.)

Legislative statements on the new hope act also indicate that full discretion was intended. Representative Hansen, the prime sponsor of the act, explained that vacatur is "not automatic." Hr'g on H.B. 1041, *supra*, at 21 min., 18 sec. Cosponsor Representative Irwin noted that he did not "love giving jurisdiction to judges to make decisions, but it's not an automatic process. You still have to go in front of a magistrate and say here's my case." *Id*. at 26 min., 43 sec.

We adhere to our decision in *Hawkins* and hold that RCW 9.94A.640(1) provides full discretion to courts to decide motions to vacate. Nevertheless, as Professor Boerner's seminal treatise on the SRA cautions, "The existence of this discretionary power is troublesome . . . because *no* criteria for its exercise are specified or readily apparent." BOERNER, *supra*, § 11.5, at 11-7 (emphasis added). All other SRA provisions include a basis for judicial discretion that is specified or contextually discernable. *Id*.

In *Hawkins*, we held that RCW 9.94A.640(1) provides for full discretion, but we also recognized that full discretion does not mean unlimited discretion, particularly in the context of the SRA. 200 Wn.2d at 494. One of the mainsprings for enacting the SRA was to combat the "virtually unfettered discretion" of sentencing courts that resulted in "severe disparities in sentences received and served by defendants committing the same

14

offense and having similar criminal histories." *Blakely v. Washington*, 542 U.S. 296, 315, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (O'Connor, J., dissenting). The SRA was intended to put "meaningful constraints" on that discretion. *Id*. at 316. The vacatur statute is part of the SRA. Thus, a court's discretion on vacatur must reflect the SRA's broader concerns and goals to constrain unfettered discretion.

*Hawkins* put it succinctly: "our role is to provide guidance to courts in exercising their discretion under the statute as written." 200 Wn.2d at 494. RCW 9.94A.640 focuses on an applicant's current demonstration of rehabilitation. *Id*. Together, *Hawkins* and RCW 9.94A.640 make clear that vacatur is concerned with whether an individual has rehabilitated postconviction such that they should be restored to full-fledged citizenship.

Therefore, we apply *Hawkins* and hold that vacatur applications must present evidence of rehabilitation for a court to exercise its discretion.

CONCLUSION

We affirm the Court of Appeals in part. We hold that an applicant for vacatur must present evidence of rehabilitation. We reverse the Court of Appeals in part. We hold Abrams's vacatur motion did not satisfy the statutory time period under RCW 9.94A.640(2)(e) and (f), specifically that the requisite number of years has not passed since he was released from custody on *all* offenses. We remand for further proceedings consistent with this opinion.

_____
Madsen, J.P.T.

WE CONCUR:

_____
Stephens, C.J.

_____
Gordon McCloud, J.

_____

_____
Whitener, J.

_____
González, J.

_____

_____

*State v. Abrams*

No. 103058-4

JOHNSON, J. (concurrence)—While I agree with the majority's conclusion that evidence of rehabilitation is necessary, I write because I disagree with the conclusion that a person is ineligible for vacation while incarcerated for a separate conviction. I would affirm the Court of Appeals.

Johnson, J.

*State v. Abrams*

No. 103058-4

MUNGIA, J. (concurring/dissenting)—This case involves the requirements that a person convicted of a class B or C felony must meet to have their conviction vacated. RCW 9.94A.640(1) and (2) provide:

> (1) Except as provided in subsection (5) of this section, every offender who has been discharged under RCW 9.94A.637 may apply to the sentencing court for a vacation of the offender's record of conviction. If the court finds the offender meets the tests prescribed in subsection (2) of this section, the court may clear the record of conviction by: (a) Permitting the offender to withdraw the offender's plea of guilty and to enter a plea of not guilty; or (b) if the offender has been convicted after a plea of not guilty, by the court setting aside the verdict of guilty; and (c) by the court dismissing the information or indictment against the offender.
>
> (2) An offender may not have the record of conviction cleared if:
>
> (a) There are any criminal charges against the offender pending in any court of this state or another state, or in any federal court;
>
> (b) The offense was a violent offense as defined in RCW 9.94A.030 or crime against persons as defined in RCW 43.43.830, except the following offenses may be vacated if the conviction did

not include a firearm, deadly weapon, or sexual motivation enhancement: (i) Assault in the second degree under RCW 9A.36.021; (ii) assault in the third degree under RCW 9A.36.031 when not committed against a law enforcement officer or peace officer; and (iii) robbery in the second degree under RCW 9A.56.210;

(c) The offense is a class B felony and the offender has been convicted of a new crime in this state, another state, or federal court in the ten years prior to the application for vacation;

(d) The offense is a class C felony and the offender has been convicted of a new crime in this state, another state, or federal court in the five years prior to the application for vacation;

(e) The offense is a class B felony and less than ten years have passed since the later of: (i) The applicant's release from community custody; (ii) the applicant's release from full and partial confinement; or (iii) the applicant's sentencing date;

(f) The offense was a class C felony, other than a class C felony described in RCW 46.61.502(6) or 46.61.504(6), and less than five years have passed since the later of: (i) The applicant's release from community custody; (ii) the applicant's release from full and partial confinement; or (iii) the applicant's sentencing date; or

(g) The offense was a felony described in RCW 46.61.502 or 46.61.504.

I agree with the majority that in order to seek vacation of a conviction under this statute, the person seeking the vacation must have been released from custody for the statutory time period. I agree with the dissent that the statute does not require the applicant to submit proof of rehabilitation.

I would reverse the Court of Appeals.

Mungia, J.

No. 103058-4

MONTOYA-LEWIS, J.[1] (dissenting)—Criminal convictions leave lingering collateral consequences on people after they have served their sentence. Those consequences—such as obstacles to secure employment, ineligibility to receive government and public assistance, and restrictions on housing that can lead to being unhoused—impose daunting impediments to successfully reentering the community after incarceration. Under Washington law, the record of certain convictions may be vacated, allowing people to rejoin society free "from all penalties and disabilities resulting from the offense." RCW 9.94A.640(4)(a). Washington's vacatur statute is a powerful mechanism to help remove these impediments and provide postconviction relief.

I cannot join the majority opinion because it creates additional burdens that exceed what the legislature has required for vacatur. I dissent as to both issues. I write separately to emphasize that RCW 9.94A.640 does not include any requirement that a person must present evidence of rehabilitation in addition to satisfying the eligibility criteria specifically enumerated in the statute.

---

[1] Justice Montoya-Lewis thanks law clerk Justin Lo for the research and drafting support in the development of this opinion, as well as the entirety of her chambers' staff.

1

We "must not add words where the legislature has chosen not to include them." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003). The majority's decision to add words here undermines legislative intent, circumvents our canons of interpretation, and violates separation of powers. While I appreciate the critical importance of the trial court's judicial discretion to decide whether or not to vacate a conviction, I do not agree that the use of the word "may" in this statute allows us to add additional requirements not specified in the statute for vacatur (including a requirement that the person seeking vacatur be in the community rather than incarcerated in order for the statutory time period for vacatur to commence).

The vacatur statute permits a court to clear the record of conviction after discharge if the applicant satisfies specified conditions. RCW 9.94A.640(1). The conditions for vacatur require that (1) a person must not have "any criminal charges against [them] pending in any court of this state or another state, or in any federal court," (2) the offense for which they seek vacatur is a qualifying type of offense, and (3) the person has been crime free for a required number of years, based on the class of the crime for which they were convicted. RCW 9.94A.640(2)(a)-(g). *The statute does not express any further criteria to apply for vacatur.*

This case requires careful application of our canons of interpretation for legislative enactments. We have long recognized that those canons require us to

begin with the plain text of the statute. *E.g.*, *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015) (citing *Dep't of Ecology v. Campbell & Gwinn*, *LLC* 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). The legislature has enumerated the criteria for a person to apply for vacatur in RCW 9.94A.640. Contrary to the majority, once a person seeking vacatur shows they have satisfied the statutory criteria, *no provision of the statute requires that person to produce additional evidence of rehabilitation* in order for a court to consider their petition. I cannot join the majority's decision to add requirements that effectively rewrite this statute, which both violates separation of powers principles and our own case law regarding canons of statutory interpretation.

Our system of separation of powers requires courts to adhere to the words chosen by the legislature. *Five Corners Fam. Farmers v. State*, 173 Wn.2d 296, 311, 268 P.3d 892 (2011). The majority argues additional evidence of rehabilitation should be required because the word "may" bestows discretion on the court, but it disregards the remaining text of the statute. While the statute uses a permissive word to describe the court's power, "[t]he readily apparent reasons for a refusal appear to have been considered by the Legislature when it defined the circumstances that exclude offenders from eligibility." DAVID BOERNER, SENTENCING IN WASHINGTON § 11.5, at 11-7 (1985). For example, "evidence of the reformation of the offender appears to be the reason for requiring

3

prescribed crime-free periods to pass before eligibility. Reliance on these factors to deny the petitions of eligible offenders would negate the legislative intent." *Id.* The majority's new, additional requirement contradicts the legislature's determination that a person's ability to remain crime free is measured by a time period specific to the class of offense. RCW 9.94A.640(2)(c)-(f).

The majority further justifies its revision of the vacatur statute by overreading our decision in *State v. Hawkins*, 200 Wn.2d 477, 519 P.3d 182 (2022), to suggest that it imposed a new burden on the applicant seeking vacatur. It did not. There, the trial court denied vacatur to a person who met the statutory eligibility criteria. *Id.* at 498. We held that the court erred in treating the seriousness of the crime as disqualifying when the statute requires the court to "treat the qualifying felony as a prerequisite to vacatur, not as a bar to vacatur." *Id.* at 494. We went on to hold the court also erred in "failing to meaningfully consider the extensive uncontradicted evidence of rehabilitation and mitigation that Hawkins presented." *Id.* at 498-99.

What we did not hold was that the applicant is *required* to present such evidence. To the contrary, *Hawkins* involved unique procedural circumstances where the court denied vacatur twice, despite the prosecutor's confirmation that Hawkins was statutorily eligible. *Id.* at 485-87. To bolster her second request for vacatur, Hawkins gathered extensive mitigation evidence, which the court

4

ignored. *Id.* We held that a court considering an application for vacatur cannot disregard such evidence—*when presented. Id.* at 498-99. *Hawkins* did not impose a new requirement for the applicant to produce evidence of rehabilitation, nor could it have, given the facts of that case.

Today, the court writes a new element into the statute beyond its text or what *Hawkins* compels. Those authorities require the applicant to show they meet the statutory eligibility criteria and require the court to consider any evidence of rehabilitation that is presented. But under the majority's decision, not only must the court consider that evidence if presented but the applicant is now *obligated* to produce such evidence to have a conviction vacated. In order to make sense of its misreading of *Hawkins*, the majority adds a whole new set of considerations not required by the statute. *See State v. Costich*, 152 Wn.2d 463, 470, 98 P.3d 795 (2004) ("[W]e presume the legislature says what it means and means what it says."). To achieve that result, the majority adds language and an element that is not present in the statute.

I would decline to depart from our canons of statutory interpretation. *See, e.g., Brown v. Old Navy, LLC*, 4 Wn.3d 580, 589, 567 P.3d 38 (2025) (following our statutory canon, not adding words where the legislature has chosen not to include them); *Branson v. Wash. Fine Wine & Spirits, LLC*, 5 Wn.3d 289, 298, 574 P.3d 1031 (2025) (same). I would affirm in part, reverse

in part, and remand for the trial court to reconsider Abrams' petition for vacatur.


Montoya-Lewis, J.


Yu, J.P.T.